908 So.2d 868 (2005)
Labotchy HARRIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02576-COA.
Court of Appeals of Mississippi.
August 9, 2005.
*870 W. Ellis Pittman, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorneys for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Labotchy Harris was convicted by a Lafayette County grand jury of count one, burglary of an inhabited dwelling; count two, sale of a stolen firearm; and count three, felon in possession of a firearm. He was sentenced to twenty-five years in count one, five years in count two, and three years, as a habitual offender, in count three. All sentences were ordered to run consecutively and to be served in the custody of the Mississippi Department of Corrections.
¶ 2. Aggrieved, Harris has appealed, asserting (1) that the trial court erred in not properly instructing the jury, (2) that the trial court committed reversible error in granting one of the State's jury instructions, (3) that the evidence, under the holding in Shields v. State, 702 So.2d 380 (Miss.1997), was insufficient to convict him of the charge of burglary of an inhabited dwelling, and (4) that the trial court committed reversible error in not severing the counts of the indictment.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. Carrie Scott, a chemistry laboratory manager and instructor and volunteer reserve officer with the University of Mississippi Police Department, lived at Lot 83, Oxford Wheel Estates Trailer Park, in Oxford, Mississippi. Sometime between October 29, 2001, and November 3, 2001, Scott's home was broken into, and a gym bag containing her police gear was stolen. Among the stolen equipment was a Glock 19 pistol, a bullet proof vest, extra clips of ammunition, a gun belt, and a police jacket. Scott testified that she had seen Labotchy Harris around the trailer park in the early months of 2001. Billy Cox, owner of Oxford Wheel Estates, also testified that Harris frequently came to the trailer *871 park to visit his father, Willie Burford, who lives behind Scott on Lott 84.
¶ 5. Jay Hill, investigator with the Lafayette County Sheriff's Department, testified that on December 9, 2001, he got a phone call from Jay Suppiah, and Suppiah informed him that a man identifying himself as "Derrick" had offered to sell Suppiah some computers. Hill testified that he instructed Suppiah to ask "Derrick" about purchasing a Glock 19 pistol and a bullet proof vest.
¶ 6. On December 10, 2001, Suppiah meet with Harris to discuss the purchase of a Glock pistol, a bullet proof vest, and three clips. On December 11, 2001, and on December 15, 2001, Suppiah recorded a conversation with Harris in which Suppiah negotiated the price for the computers, gun, bullet proof vest, and clips. No purchase was made on these dates because Harris did not have the bullet proof vest. On December 19, 2001, Suppiah arranged another meeting with Harris in order to purchase the vest and gun, but Harris did not show up. However, on December 30, 2001, Suppiah met with Harris and purchased the gun and three loaded magazines which were turned over to Hill on December 31, 2001. Hill further testified that Harris was not immediately arrested because Hill wanted to see if the bullet proof vest and the other stolen items could be recovered. The bullet proof vest and other stolen items were never recovered. Harris was arrested on January 17, 2002. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Failure to Properly Instruct the Jury

¶ 7. Harris first argues that the trial court erred in giving instructions S-1 and S-3. Instruction S-1 defined the elements of burglary, and Instruction S-3 advised the jury that it may infer guilt in a circumstance where, in the absent of a reasonable explanation, a person was in possession of recently stolen property. Harris also argues that the trial court should have given a proper circumstantial evidence instruction because the prosecution did not have a confession or an eyewitness. Harris maintains that the trial court's granting of S-1 amounted to a failure to submit to the jury the essential elements of the crime in that the jury was told that the State only needed to prove each and every element beyond a reasonable doubt and was not told that the State needed to exclude every reasonable hypothesis consistent with Harris's innocence before the jury could convict. Harris further argues that, despite his trial counsel's failure to object to jury instruction S-1, this Court should address this issue under the plain error doctrine.
¶ 8. The State counters that this issue is procedurally barred because Harris's counsel failed to object to the instruction and failed to offer a circumstantial evidence instruction. See Lynch v. State, 877 So.2d 1254, 1264(¶ 18) (Miss.2004); Cunningham v. State, 828 So.2d 208, 214(¶ 25) (Miss.2002). The State maintains that not withstanding the procedural bars, Harris's argument is patently wrong because it is the duty of trial counsel for a defendant to submit a circumstantial evidence instruction.
¶ 9. In a circumstantial evidence case, "the test to be applied in considering the sufficiency of proof is whether a rational fact finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt of the crime charged." Shields v. State, 702 So.2d 380, 382 (Miss.1997). A circumstantial instruction should only be given when *872 the prosecution cannot produce an eyewitness or a confession. McNeal v. State, 551 So.2d 151, 157 (Miss.1989). However, while a circumstantial evidence instruction may be appropriate, it remains incumbent upon the defendant to request such an instruction. Poole v. State, 231 Miss. 1, 94 So.2d 239, 240 (1957). It is not generally the obligation of the trial court to prepare and submit instructions on behalf of the State or the defendant. Samuels v. State, 371 So.2d 394, 396 (Miss.1979).
¶ 10. "Case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995). As a general rule, "no error may be predicated upon the Court's refusal to give an instruction defense counsel never requested." Williams v. State, 566 So.2d 469, 472 (Miss.1990). Accordingly, we find no error in the trial court's failure to give a circumstantial evidence instruction.[1]
¶ 11. Harris next argues that the trial court committed reversible error in granting the State's jury instruction S-3 because S-3 amounted to a peremptory instruction.[2] Harris maintains that S-3 effectively told the jury that it may infer guilt as to not only the burglary charge, but also the charges of possession of a firearm by a convicted felon and the sale of a stolen firearm. Harris maintains that an instruction which correctly states the principles of the applicable law is set forth in Fletcher v. State, 168 Miss. 361, 151 So. 477 (1933). The instruction discussed in Fletcher reads: "The Court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt of larceny." Id. at 365, 151 So. 477. Harris also points out that in Hall v. State, 279 So.2d 915 (Miss. 1973), the court held that "in proper cases the instruction may be given as approved in Fletcher, but no attempt should be made to enlarge the scope of the instruction or to experiment with a change in language." Id. at 917.
¶ 12. Harris asserts that the trial court failed to instruct the jury that S-3 should only apply to count I of the indictment  the charge of burglary. Harris maintains that the trial court in giving S-3 literally told the jury to apply S-3 to all counts in the indictment, and thus, did what the Mississippi Supreme Court has ordered lower courts not to do  namely enlarge the scope of the instruction or experiment with a change in the language of the instruction.
¶ 13. The State urges a denial of appellate review of this issue because while Harris objected to the granting of instruction S-3, he failed to state the specific reason for his objection. We have reviewed the record and find that the State is correct in its assertion that Harris failed to offer specific reasons for his objection to the instruction. "It is well established that objections must be made with specificity *873 to preserve [the issue] for appeal." Oates. v. State, 421 So.2d 1025, 1030 (Miss. 1982).
¶ 14. While it is clear in the record that Harris did not give specific reasons for his objection to instruction S-3, it is not entirely clear if he had a chance to state his reasons before the trial court announced that it was going to give the instruction "over the strenuous objection of the defendant." In any event, assuming that the issue is procedurally barred, we find that, notwithstanding the bar, there is no merit in this issue. Our supreme "[c]ourt has consistently held that unexplained possession of recently stolen property is prima facie, although no means conclusive, evidence of burglary." Brooks v. State, 695 So.2d 593, 594 (Miss.1997). Likewise, our supreme court has held that "possession of property recently stolen is a circumstance which may be considered by the jury from which, in the absence of a reasonable explanation, the jury may infer guilt of larceny." Fletcher, 168 Miss. at 365, 151 So. at 478. Accordingly, we find no merit in this issue.

(2) Sufficiency of the Evidence

¶ 15. Harris argues that, under the pronouncements made in Shields, the evidence was insufficient to convict him of burglary. In Shields, the Mississippi Supreme Court addressed the question of whether proof of possession of the fruits of a burglary, without more, was sufficient to convict a defendant of burglary. In concluding that possession alone was sufficient to meet the State's burden of proof, given that sufficiently probative circumstances of possession exists, the supreme court listed four factors to be considered:
1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;
3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Id. at 383.
¶ 16. As to the first factor, we note that almost two months passed between the date of the burglary and the date that Harris was found to be in possession of one of the items taken in the burglary, the Glock 19, along with three loaded clips. This factor distracts from the inference that Harris committed the burglary as there was ample time to acquire the gun and clips from someone else.
¶ 17. The second factor concerns the number or percentage of the fruits of the crime possessed. The evidence was that only one item, the Glock 19, was recovered. However, at one time Harris did indicate that he had a bullet proof vest to sell. When the purchase of the gun was made, Harris explained that the vest was in Texas and that it would take him some time to get it. The Glock was positively identified by serial number as being the one taken during the burglary. At first blush, it might appear that this factor distracts from the inference because many items were taken during the burglary and only one was recovered.[3] However, since all of the stolen items were police gear, and Harris was found to be in possession of one of the two larger items and cognizant of the whereabouts of the other, it seems *874 logical that this factor lends strength to the inference.
¶ 18. Factor number three speaks to the effort at concealment. The testimony on this issue is that Harris gave a fictitious name in all of his dealings with Suppiah. He also sold the gun in a parking lot although he had previously shown the gun to Suppiah at Suppiah's apartment. This factor lends strength to the inference.
¶ 19. The final factor addresses the explanation given for possession of the stolen items, if such an explanation was given. According to Suppiah, when Harris first made the call to Suppiah, Harris told Suppiah that the merchandise which Harris had to sell was stolen merchandise. While the gun was not specifically mentioned in that first conversation between Suppiah and Harris, it is not unreasonable to infer that the gun was a part of the cache of stolen property that Harris possessed. Harris did not say whether he had stolen the merchandise or that someone else had stolen it and sold it to him. It would seem rather logical that if Harris had purchased the stolen loot from someone else he might have explained how he came to be in possession of it. This factor lends strength to the inference.
¶ 20. In summary, we find that an analysis of the Shields factors demonstrate that the evidence, although circumstantial, was sufficient to warrant the jury's finding that Harris burglarized Scott's trailer.

(3) Severance of the Counts in the Indictment

¶ 21. Harris argues that the trial court erred in refusing to sever counts one and two because there was no common transaction or occurrence between the offenses. In support of this argument, Harris cites, Corley v. State, 584 So.2d 769, 772 (Miss.1991) where the Mississippi Supreme Court stated, "in allowing a multi-count indictment . . . the offenses must be based on the same act or transaction, or be based on two or more acts or transactions, connected together or constitute parts of a common scheme or plan."
¶ 22. Corley is in accord with Mississippi Code Annotated Section 99-7-2 (Rev. 2000) and Rule 7.07 of the Uniform Rules of Circuit and County Court Practice. Section 99-7-2 provides in pertinent part:
(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan. (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
¶ 23. In deciding whether severance is proper in a multi-count indictment, the "[t]rial court should consider the time period between offenses, whether evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven." Eakes v. State, 665 So.2d 852, 861 (Miss.1995) (citing Corley, 584 So.2d at 772). "If this procedure is followed, [appellate courts] will give deference to the trial court's findings on review, employing the abuse of discretion standard." Id.
¶ 24. The record reflects that on the day before trial, Harris filed a motion seeking to sever count three from counts one and two. Harris reasoned that the charge of a felon in possession of a weapon had nothing to do with the burglary of the mobile home where the weapon was stolen or with the actual selling of the weapon and that trying this charge with the other two charges would operate to his prejudice. In his brief, however, Harris contends the motion sought to sever count one *875 from counts two and three. That is clearly not the case, and to the extent that Harris seeks to predicate error on the trial court's refusal to sever count one from counts two and three, he is procedurally barred, as he never sought that relief in the trial court. Apparently, in the trial court, Harris was willing to have the two counts involving the gun tried together. We discuss this issue based upon what was presented to the trial court.
¶ 25. The trial court, relying upon Wright v. State, 797 So.2d 1028 (Miss.Ct. App.2001), denied the motion.[4] We find no abuse of discretion. The common thread running through each of the counts is the gun. It was taken in the burglary, it was possessed, and it was sold. Each of the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. It seems that the scheme or plan was to commit a burglary and get items which could be sold illegally for cash. In considering the question of severance on the facts of this case, we find the time differential between count one and the other two counts to be insignificant. We also find no impediment to trying count three with counts one and two even though part of the necessary proof on count three would not be admissible in counts one and two. Id. at 1030(¶ 7).
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II, CONVICTION OF THE SALE OF A STOLEN FIREARM AND SENTENCE OF FIVE YEARS, AND COUNT III, FELON IN POSSESSION OF A FIREARM, AS A HABITUAL OFFENDER, AND SENTENCE OF THREE YEARS, IS AFFIRMED. THE SENTENCES IN COUNTS II AND III SHALL RUN CONSECUTIVELY AND CONSECUTIVELY TO THE SENTENCE IN COUNT I, AND ALL SENTENCES ARE TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] There is case law that says the trial court and the prosecution have an obligation to ensure that the jury is properly instructed with regard to the elements of the crime. See, e.g., Edwards v. State, 737 So.2d 275, 293(¶ 30) (Miss. 1999). However, the failure to give a circumstantial instruction is not tantamount to failing to instruct on all the elements of the crime. The jury was instructed that it had to be convinced of Harris's guilt beyond a reasonable doubt before it could convict him.
[2] S-3 reads as follows:

The court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt.
[3] According to Scott, the victim, she lost the following additional items in the burglary: two flashlights for which she paid approximately $179, a portable Motorola radio, two sets of handcuffs, a nylon gun belt, a pouch for a 9 millimeter clip, a holster for a 9 millimeter Glock, a flashlight holder, a baton holder, a single hand cuff case, a double handcuff case, and a glove pouch.
[4] In Wright, Danny J. Wright "was indicted in a single multi-count indictment for armed robbery, possession of a firearm by a convicted felon, and drug possession. Wright sought to have all three counts severed for separate trials." Id. at 1029(¶ 3). The trial court severed the drug charge but permitted the State to proceed with the other two counts in a single trial. Id.