CHANDLER, J.,
for the Court.
¶ 1. In June of 2003, Steven Daniel Rumfelt was indicted in the Circuit Court of Yalobusha County for felony child abuse. After a three day trial, a jury found Rumfelt guilty of felony child abuse. Rumfelt filed a motion for judgment of acquittal or in the alternative, a motion for a new trial. The trial judge denied the motions and sentenced Rumfelt to twenty years in the Mississippi Department of Corrections. Rumfelt appealed for the following:
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTRODUCTION OF A VIDEO TAPE WHICH SHOWED THE CHILD UNDERGOING PHYSICAL THERAPY
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO VIEW A DEMONSTRATIVE VIDEO OF A “SHAKEN BABY” EPISODE
III. WHETHER THE TRIAL COURT ERRED IN DENYING A CIRCUMSTANTIAL EVIDENCE INSTRUCTION
IV. WHETHER ERRORS CUMULATIVELY DENIED RUMFELT A FUNDAMENTAL RIGHT TO A FAIR TRIAL
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Miranda Rumfelt recalls her son, Logan, was acting normal on the morning of March 30, 2003. Around 1:30 p.m., Miranda left Logan in the care of his father, *999 Steven Rumfelt, while she went to work. Less than two hours later, Rumfelt brought Logan to Miranda’s place of employment. Logan’s face was blue, he was not breathing, and he was covered with vomit. Rumfelt told Miranda that he left the baby in a carpeted room. He said Logan was standing and holding on to a chair. Rumfelt said he heard Logan fall. He then went to the room where he had left Logan and found the child, limp and unconscious.
¶ 4. Miranda took Logan to the hospital in Oxford and he was later taken to the infant intensive care unit at Le Bonheur in Memphis, Tennessee. At Le Bonheur, Miranda was told that Logan had “shaken baby” syndrome.
¶ 5. Cindy Barnes, a social worker, was notified of Logan’s condition. Rumfelt told Barnes that Logan was acting lethargic on the morning of March 30, 2003. He told Barnes that he was washing up after feeding Logan when he heard a thud and went to see if Logan was injured. Rum-felt said he found Logan on the floor with his arms clenched and his eyes rolled back in his head. He claimed that he attempted CPR but could not remember if he shook Logan to make him breathe. Rumfelt admitted that Logan would occasionally get on his nerves, and Rumfelt would take the baby to his mother’s house or to a neighbor’s house during these episodes. After speaking with Rumfelt, Barnes obtained a court order to protect Logan from Rum-felt.
¶ 6. In June of 2003, Rumfelt was indicted on charges of felony child abuse in the Circuit Court of Yalobusha County. Several witnesses testified at trial.
¶7. Roger Thomas is an investigator with the Water Valley Police Department. Thomas testified that Rumfelt made the following statement to him:
If I can’t get him to stop crying, I get my mom to help and he usually calms down. I could have shaken Logan because I do really get frustrated at times, but I really do not remember shaking him Sunday. There have been times that I’ve gotten so frustrated that I have blacked out completely and do not remember anything that happened.... It depends on how bad I’m upset.... I just do not remember what all happened Sunday afternoon.
¶ 8. Dr. Edward Chaum testified that he examined Logan the day after he was injured. Dr. Chaum found significant trauma to both of Logan’s eyes with numerous hemorrages and separation of the vitreous gel from the surface of the retina. Dr. Chaum stated that the injuries were consistent with only one diagnosis, “shaken baby” syndrome. Dr. Chaum specifically eliminated a fall, seizure, accident, or CPR as the cause of Logan’s injuries. Dr. Chaum testified that there was controversy in the medical community regarding the amount of force needed to cause retinal bleeding.
¶ 9. Dr. Randy Richardson is an expert in the field of ophthalmology. Dr. Richardson first examined Logan in September of 2003 and last examined Logan in June of 2004. Dr. Richardson testified that Logan is legally blind.
¶ 10. Dr. Robert Walling, an expert in pediatrics and child abuse, also examined Logan. Dr. Walling testified that he reviewed various CAT scans, MRIs, and x-rays, which showed Logan suffers from a diffuse axonal injury. He stated that a CAT scan from May of 2003 revealed major and permanent brain damage. Dr. Walling opined that Logan’s injuries were far out of proportion to injuries caused by a simple fall. Dr. Walling testified that Logan’s symptoms were textbook indicators of “shaken baby” syndrome. In his *1000 testimony, Dr. Walling referred to a video of shaken baby syndrome to help explain the injuries he was describing. Dr. Walling testified that Rumfelt’s version of how Logan acquired the injuries was a common explanation in “shaken baby” cases. Dr. Walling also explained that the medicine, Phenergan, was not the cause of Logan’s injuries. Phenergan was one of the drugs used to treat Logan.
¶ 11. Logan’s pediatrician, Dr. Michael Dennis, first saw Logan on July 19, 2002, when Logan was two months old. Dr. Dennis testified that Logan’s condition was normal at that time and the examination revealed no signs of abuse or neglect. Dr. Dennis testified that Logan was neurologi-eally significantly impaired on March 30, 2003.
¶ 12. Dr. Robert Sanford, a pediatric neurosurgeon, testified that Logan’s injuries were consistent with “shaken baby” syndrome. Dr. Sanford reiterated the severity of Logan’s brain damage. Dr. Sanford testified that other forces could cause Logan’s injuries, such as car accidents and falls, however, bruising would generally be associated, with those types of injuries.
¶ 13. Amy Schillinger, a physical therapist, evaluated Logan on July 13, 2003. Schillinger explained the seriousness of Logan’s injuries and showed a video of Logan’s physical therapy session. The video showed Logan in hand and foot braces. The video revealed that Logan lacked the ability to control the movement of his feet when the braces were removed.
¶ 14. Dr. Ed Kaplan, a retired neurosurgeon, testified that there are many controversies in the medical literature concerning the diagnosis of “shaken baby” syndrome. Dr. Kaplan stated that possible side effects of the Phenergan was convulsive seizures and respiratory depression. Dr. Kaplan testified, although there were other potential explanations for Logan’s injuries, he thought that Logan was a shaken baby.
¶ 15. The final witness to testify at trial was Rumfelt. Rumfelt stated that he was the only person with Logan at the time Logan suffered the significant injuries. Rumfelt testified that he could not provide facts as to how Logan received the injuries and he denied violently shaking his son. Rumfelt stated that he attempted to give Logan CPR when it appeared that Logan had stopped breathing.
¶ 16. After a three day jury trial, Rum-felt was found guilty of felony child abuse and was sentenced to twenty years in the Mississippi Department of Corrections.
LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTRODUCTION OF A VIDEO TAPE WHICH SHOWED THE CHILD UNDERGOING PHYSICAL THERAPY
¶ 17. Rumfelt claims that the prejudicial effect of the videotape showing Logan’s inability to control the movement of his feet without braces far outweighed the probative value. Rumfelt contends that he never disputed the seriousness of Logan’s injuries; therefore, the trial court erred in introducing the videotape.
¶ 18. The State contends the issue is barred because Rumfelt failed to properly preserve the issue for appeal. The State argues Rumfelt failed to offer a contemporaneous objection on the record which was properly supported with grounds for the objection. The State also argues that the seriousness of the injuries are an element of the crime so the probative value outweighed the prejudicial effect.
¶ 19. Subsequent to playing the tape, after the witness was excused, counsel for Rumfelt stated:
[F]or the record, I want to make my objection to the playing and introduc *1001 tion into evidence of the videotape offered by the State of Mississippi concerning the physical therapy treatment of Logan Rumfelt. I submitted to the Court that I had seen the tape and that respectfully it was a therapy session wherein the baby cried virtually the entire time. I believed it was going to be inflammatory to the jury and that the probative value of the playing and introduction of that tape was far outweighed by the prejudicial effect.
The court responded: “[m]y ruling was that I thought the probative value would outweigh the prejudicial effects.... ”
¶ 20. Rumfelt claims the objection lodged subsequent to playing the tape was sufficient. However, it is well settled that a defendant must preserve the error for review by making a contemporaneous objection or the assignment of error will be procedurally barred. King v. State, 615 So.2d 1202, 1205 (Miss.1993). Although Rumfelt made an objection to the videotape on the record, the issue is whether the objection was made contemporaneously-
¶21. The contemporaneous objection rule means that the objection must be interposed at the time of the alleged error so that the trial court may be given an opportunity to rule. Anderson v. Jaeger, 317 So.2d 902, 906 (Miss.1975) (holding “[tjimely objections, followed by appropriate and timely motions, are necessary to preserve such points on appeal.”). The only objection made on the record fails to comply with the rule in Anderson. Rum-felt admits that “[a] strict reading of the Court transcript leaves it unclear whether an objection was lodged, but a bench conference was held prior to the introduction of this tape.”
¶ 22. The bench conference was unrecorded and we cannot speculate as to the context of the discussion. Although Rum-felt implies that a bench conference is an adequate objection, the Mississippi Supreme Court has held that an unrecorded bench conference is not sufficient to enter a proper objection on the record. Cotton v. State, 675 So.2d 308, 314 (Miss.1996). For the preceding reasons, this issue is without merit.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO VIEW A DEMONSTRATIVE VIDEO OF A “SHAKEN BABY” EPISODE
¶ 23. Rumfelt alleges that the introduction of the video demonstrating a “shaken baby” episode violated his Sixth Amendment right to confront witnesses. Rumfelt contends that his rights were violated because he was unable to test the credibility of the speaker or the adequacy of the demonstration. The State says that the issue should be procedurally barred because Rumfelt failed to preserve the error for appeal. Rumfelt admits that no objection to the tape was made at trial. However, Rumfelt claims admitting the tape was plain error and, therefore, no objection was required.
¶ 24. The plain error rule will only be applied if Rumfelt’s fundamental rights are affected. Grubb v. State, 584 So.2d 786, 789 (Miss.1991). In Burchfield v. State, 892 So.2d 248, 255 (Miss.Ct.App.2004), this Court held “that there is no plain error in the failure to either make a Sixth Amendment objection or at least to have such an objection clearly preserved on the record.” Therefore, this issue is without merit.
III. WHETHER THE TRIAL COURT ERRED IN DENYING A CIRCUMSTANTIAL EVIDENCE INSTRUCTION
¶ 25. Rumfelt claims that the trial court failed to properly instruct the jury *1002 on the State’s burden of proof. Again, the State contends that the issue is procedurally barred because Rumfelt failed to preserve the error for appeal. Rumfelt argues that this error is plain error which deprived him of his fundamental right to a fair trial.
¶ 26. If Rumfelt did not make an objection at trial, he must rely on the plain error rule to raise the assignment of error on appeal. Gray v. State, 487 So.2d 1304, 1312 (Miss.1986). The plain error doctrine has two requirements: there must be error and the error must have resulted in a manifest miscarriage of justice. Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). The plain error rule will only be applied if Rumfelt’s fundamental or substantive rights are affected. Grubb v. State, 584 So.2d 786, 789 (Miss.1991).
¶ 27. In Harris v. State, 908 So.2d 868, 871(7) (Miss.Ct.App.2005), the defendant argued that the trial court should have given a circumstantial evidence instruction. Harris argued, despite the fact that his counsel failed to object, the court should address this issue under the plain error doctrine. Id. The Court held that the issue was procedurally barred because counsel failed to object and counsel failed to offer a circumstantial evidence instruction. The court also noted “that not withstanding the procedural bars, Harris’s argument is patently wrong because it is the duty of trial counsel for a defendant to submit a circumstantial evidence instruction.” Id. at 871(¶ 8).
¶28. Although Rumfelt contends that the trial judge had the duty to properly instruct the jury, “[c]ase law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender.” Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995). This issue is without merit.
IV. WHETHER ERRORS CUMULATIVELY DENIED RUMFELT A FUNDAMENTAL RIGHT TO A FAIR TRIAL
¶29. Rumfelt claims that the cumulative effect of the alleged errors deprived him of his fundamental right to a fair trial. There was no error. Therefore, this issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF YALOBUSHA COUNTY OF CONVICTION OF FELONY CHILD ABUSE WITH A SENTENCE OF TWENTY YEARS INCARCERATION IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.