# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00805-SCT

*MARCUS DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2009 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: BENJAMIN ALLEN SUBER |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA LYNN BLOUNT |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Davis was convicted by a Leflore County jury for attempted armed robbery of a Dollar Tree store employee and sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections, with ten years to be served, followed by ten years of post-release supervision, with five years supervised and five years unsupervised.  Davis appeals his conviction to this Court, raising the sole issue of whether the trial court abused its discretion in admitting evidence of Davis's involvement in a prior armed robbery of an

employee of the same Dollar Tree store. We find that the trial court did not abuse its discretion in admitting evidence of Davis's involvement in the prior armed robbery, because the evidence was relevant to Davis's intent, and its probative value outweighed its prejudicial effect. Accordingly, we affirm Davis's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On May 4, 2007, Bobbie McKay (a female), the then-manager of the Dollar Tree store in Greenwood, Mississippi, traveled with the cashier on duty that night, Shannon Jefferson (a male), in his vehicle, to a nearby bank to make the store's night deposit. The then-assistant manager, Phoebe Porter, followed behind them in her own vehicle to the bank, per company policy. McKay got out of Jefferson's vehicle to drop the deposit in the night drop-deposit box. As she was getting ready to drop the deposit, another vehicle appeared. According to McKay, as she turned around (from facing the deposit box, where she had dropped the money), she saw a tall person, dressed in dark blue with a dark blue hoodie over his head coming toward her. Jefferson testified that the person was dressed in dark clothing and was wearing a ski mask. The person was holding something shiny that McKay and Jefferson suspected was a gun. McKay recalled that the person dropped the shiny object, went to pick it up, and then ran back to the blue, four-door sedan from which the person had emerged, because McKay was screaming. Jefferson similarly testified that it seemed like a clip may have fallen out of the gun and then the person picked it up, ran back to the waiting vehicle, and entered the passenger side of the car. McKay and Jefferson believed the person

2

had been planning to rob McKay. McKay returned to Jefferson's car, and he, curiously, told her not to call the police.[1]

¶3. Porter called the police, and the police located the blue sedan, occupied by the man who had attempted to rob McKay, as well as another man, Travis Anderson. The police engaged in a high-speed chase of the sedan, which ended when the driver of the sedan (later determined to be Anderson) lost control and drove off the road into a cotton field. The two men exited the passenger side of the sedan, with the taller man who had attempted to rob McKay exiting first, and then both men ran into the cotton field. The police caught Anderson, but the taller man escaped the police. The policeman who had chased down the sedan and was on the scene at the cotton field testified that, on the seat of the sedan, the police found Davis's ID card from Viking Range, his place of employment.[2] The policeman testified that, when he saw Davis's ID card in the sedan, he deduced that the tall, slim man who had escaped probably was Davis. The tall man's shape and size was consistent with the shape and size of Davis, whom the policeman happened to know from having worked with him for several years at a past job.

---

[1] The State now suspects Jefferson assisted Davis in planning the attempted robbery.

[2] The policeman who testified to having seen the ID, Sergeant Roosevelt Roach, testified that he told a detective, Sergeant Chad Wiltshire, about it. Wiltshire testified that the Roach did in fact tell him about the ID (although there are some slight inconsistencies in the trial transcript regarding whether Roach showed Wiltshire the ID or only told him about it, and also about where exactly the two officers were when Roach told Wiltshire about the ID). Wiltshire testified that he had no reason to disbelieve Roach's testimony that Roach had seen the ID. Roach told Wiltshire he gave the ID to another detective, Deputy Willoughby, who conducted an inventory of the car back at the police station; however Willoughby told Wiltshire that Roach did not give him the ID.

¶4.    The investigator who conducted the inventory of the sedan recovered a pistol from the glove compartment, a blue ski mask, a cell phone, and the car's license plate, which was in the back seat of the car.[3]  A magazine with loaded rounds was found at the bank on the ground beside the ATM where McKay had made the night deposit.  No usable latent prints were found on the gun or the magazine.  Investigation revealed that the cell phone belonged to Davis, and that a phone call had been placed from that cell phone to the Dollar Tree store about fifteen minutes prior to the attempted robbery.

¶5.    Davis had gone to his job at Viking the day before the attempted robbery, but not the day after the attempted robbery, nor any day thereafter.[4]  He ultimately was arrested on the Greenwood police's warrant in Harris County, Texas, where he had moved following the attempted robbery.[5]

¶6.    In addition to the testimony provided by Dollar Tree employees McKay and Jefferson and law-enforcement officers, Anderson, the man driving the blue sedan, also testified.  Anderson, who was twenty-one at the time of the attempted robbery, had met Davis, who

---

[3] Anderson testified that the license plate was inside the car because "the screws had rusted and made the holes bigger and [he] just put the tag in the back windshield."  In other words, Anderson testified that he had not removed the license plate in preparation for the robbery.

[4] The attempted robbery occurred the night of May 4, 2007.  Davis went to his job at Viking on May 3, 2007, but not on May 5, 2007, nor any day after that.  The transcript is not clear as to whether he worked on May 4, 2007.

[5] At the sentencing hearing, Davis testified that he had decided to leave his job at Viking and go to Texas "[b]ecause [he] just wanted a better life, just different change."  Davis did not give Viking notice that he was leaving his job, nor did he have a job lined up in Texas at the time he left Mississippi.

was thirty-six at the time of the attempted robbery, while both men were working at Viking. Anderson testified to the following: Anderson's and Davis's relationship had been limited to small talk at the Viking plant until Davis invited Anderson on May 3, 2007 (the day before the robbery) to join him at La Pinata, a Mexican restaurant. Davis treated Anderson – who was a custodian at Viking and lived in a "little shack" behind his mother's house out in Tchula – to a meal and a drink. At La Pinata, Davis told Anderson he was hurting financially and that he needed to "hit a lick."[6] Davis explained that he "had hit one once before and he didn't want to use his vehicle to do it again."

¶7. According to Anderson, Davis told Anderson that the prior "lick" was a stick-up at Dollar Tree, where Davis had robbed his (Davis's) wife, who worked there, and then fled. Anderson thinks Davis said he called the Dollar Tree before the stick-up to find out what time his wife got off work (and thus what time she would be exiting the store with the night deposit). Davis wanted to use Anderson's car to "hit another lick" involving Dollar Tree. Anderson told Davis that he could not allow him to use the car (the blue Buick Skylark sedan eventually used in the attempted robbery) because the car was owned by his mother. That ended the conversation about "hitting a lick."

¶8. According to Anderson, the following evening, May 4, 2007, Davis and Anderson made plans to get together again. This time, they met at Davis's house in Greenwood at about 8:00 p.m. or 8:30 p.m. When Anderson pulled up to the house, Davis pulled up behind

---

[6] "Hit a lick" is a colloquialism for robbery.

him in his white truck and had gotten into Anderson's car. Davis was dressed in a brown hoodie and black and brown pants and shoes. Davis told Anderson he needed to go by the bank and directed Anderson to the bank. Once they had gotten to the bank, Davis told Anderson to pull over, and Davis made a phone call, asking the person on the other end "what time his friend girl got off from work." Davis told Anderson he was waiting for someone to pull up, and when a car pulled up, Davis said, "That's who I need to see," and then he got out of Anderson's car, pulling on a ski mask and pulling out a gun as he did so. Davis then ran over to McKay, McKay screamed, and then Davis ran back to Anderson's car and told Anderson to drive. Anderson testified that before Davis had gotten out of the car, he did not know Davis was going to try to rob McKay. The high-speed chase then ensued, with Davis directing Anderson where to drive. Anderson testified that he had wanted to stop, but Davis had told him to continue, and Anderson had been fearful of Davis because Davis had a gun. The chase ended in a cotton patch, where Anderson was caught by police.

¶9.    Anderson made two false statements to the police. Anderson initially told police Davis's nickname rather than Davis's real name because, according to Anderson, he feared that if he revealed Davis's real name, Davis would know it was him who had told and would retaliate by hurting Anderson's family. The other false statement Anderson made to the police was that Davis had been driving the car. According to Anderson, he made this statement because the police were verbally and physically aggressive, and he was just agreeing to everything they asked him – "[He] was just telling them what [he] thought they really wanted to hear and [he] was really just trying to get it over with. . . . [The police] were

6

being too aggressive for [him] and [he] had never been to jail anyway [or even dealt with the police] . . . ." Anderson testified he had met up with Davis the night of the attempted robbery only because "[he] wanted to get back out to eat again at La Pinata."

¶10.    Jefferson, the Dollar Tree employee who drove McKay to the bank the night of the attempted robbery, testified regarding the robbery that had taken place in December 2006 (about five months before the attempted robbery at issue in the instant case).  One night in December 2006, while Jefferson and Annette Davis, Davis's wife who was employed by Dollar Tree as assistant manager at the time,[7] were exiting the Dollar Tree store, someone dressed in dark clothing ran up to Annette, who was walking in front of Jefferson, and snatched the night-deposit money she was holding.  The robber was wearing a hoodie, so Jefferson could not see his face.  The robber was never caught.

¶11.    Davis and Anderson were indicted for one count of attempted armed robbery and one count of fleeing law enforcement in the Circuit Court of Leflore County.  Prior to trial, Anderson entered a guilty plea.  The trial court directed a verdict on the fleeing-law-enforcement charge against Davis, dismissing that count.  After a two-day trial, during which Davis elected not to call any witnesses, the jury convicted Davis of attempted armed robbery.  After a sentencing hearing, the trial court sentenced Davis to a term of twenty years in the custody of the Mississippi Department of Corrections, with ten years to be served, followed by ten years of post-release supervision, with five years supervised and five years

---

[7] Annette Davis was not employed by Dollar Tree at the time of the May 4, 2007, robbery.

unsupervised. After the trial court denied Davis's motion for a new trial, or, in the alternative, judgement of acquittal notwithstanding the verdict, Davis timely appealed to this Court.

## DISCUSSION

¶12. The sole issue Davis raises on appeal is whether the trial court abused its discretion in admitting testimony regarding the December 2006 unsolved armed robbery of the same Dollar Tree store. Davis argues that the evidence regarding the December 2006 robbery was not relevant under Mississippi Rule of Evidence 404(b) and was more prejudicial than probative under Rule 403.

¶13. Pretrial, Davis made an *ore tenus* motion to exclude any evidence regarding the December 2006 robbery. The trial court denied the motion, finding that the evidence was admissible under 404(b) because it was relevant to motive, intent, or common plan and was not admitted to prove that Davis had acted in conformity with his character. The trial court also found that the two robberies were interrelated in that they had targeted the same store and had occurred only five months apart. The trial court further found that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, or delay. The evidence, the trial court explained, was not introduced to appeal to the jury's emotions or sympathies.

¶14. We review a trial court's admission or exclusion of evidence for abuse of discretion. *Murray v. State*, 849 So. 2d 1281, 1288 (Miss. 2003). The trial court's discretion must be exercised within the confines of the Mississippi Rules of Evidence. *Id.* We will reverse only if such discretion has been abused and a substantial right of a party has been affected. *Id.*

8

¶15.    Rule 402 of the Mississippi Rules of Evidence requires that evidence be relevant and provides that all relevant evidence is generally admissible.  Miss. R. Evid. 402.  Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or waste of time.  Miss. R. Evid. 403.  Further, Rule 404(b) explains that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."  Miss. R. Evid. 404(b).  "It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.*  Evidence of other crimes, wrongs, or acts of the defendant offered pursuant to Rule 404(b) may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Miss. R. Evid. 403.

¶16.    We apply a two-part analysis to determine the admissibility of evidence under Rule 404(b):

> The evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect.  The second part of this analysis is required by Mississippi Rule of Evidence 403, as Rule 403 is the ultimate filter through which all otherwise admissible evidence must pass.

*Welde v. State*, 3 So. 3d 113, 117 (Miss. 2009) (internal citations and quotations omitted).

¶17.    We find that the evidence regarding the December 2006 unsolved armed robbery of the same Dollar Tree store was relevant to proving Davis's intent, and further, that it was not admitted to prove Davis's character to show that he acted in conformity therewith.  Miss. R. Evid. 404(b).  Evidence that he had robbed the same store several months earlier makes it

9

more likely that he intended to rob McKay on May 4, 2007, even though he did not end up successfully doing so. Establishing that Davis intended to rob McKay was necessary for the State to meet its burden of proving beyond a reasonable doubt that Davis "did unlawfully, willfully and feloniously, attempt to take the personal property of Dollar Tree from the person of or presence of Bobby McKay, against her will, by putting Bobby McKay in fear of immediate injury to her person by exhibition of a deadly weapon . . . . " – i.e., establishing intent was fundamental to proving Davis guilty of attempted armed robbery. In addition, the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. Miss. R. Evid. 403. As the trial court noted, evidence of Davis's involvement in the prior robbery is not the type of evidence that would play on the jurors' sympathies or emotions.

¶18. Furthermore, this Court has held that "the State has a legitimate interest in telling a rational and coherent story of what happened." *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986) (internal quotations and citations omitted). *See also Williams v. State*, 991 So. 2d 593, 607 (Miss. 2008). "Where substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given even though it may reveal or suggest other crimes." *Brown*, 483 So. 2d at 330 (internal quotations and citation omitted). *See also Williams*, 991 So. 2d at 607.

¶19. Introducing evidence of Davis's involvement in the December 2006 robbery was necessary for the State to tell "a rational and coherent story of what happened." *Brown*, 483 So. 2d at 330 (internal quotations omitted). Anderson's testimony suggests that, were it not

10

for Davis having already used his vehicle in a robbery of the same Dollar Tree store, Davis would not have sought use of Anderson's car. Thus, introducing evidence of the December 2006 robbery was necessary to explain to the jury how Anderson came to be involved in the attempted robbery. Furthermore, according to Anderson, Davis was the one who brought up the December 2006 robbery and who voluntarily admitted that: ". . . he was hurting financially. . . and he needed to hit a lick . . . he had hit one once before [involving Dollar Tree] and he didn't want to use his vehicle to do it again. He wanted to use [Anderson's] vehicle."[8]

¶20.    Accordingly, we find that the trial court did not abuse its discretion in admitting evidence of the December 2006 robbery. Notably, in addition to analyzing the evidence under Rule 404(b) and Rule 403, the trial court offered to give a limiting jury instruction regarding Rule 404(b).[9]

### CONCLUSION

¶21.    For the reasons discussed above, we affirm Davis's conviction and sentence.

**¶22.    COUNT I: CONVICTION OF ATTEMPTED ARMED ROBBERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS TO BE SERVED,**

---

[8] Anderson further testified:

> [Davis] just said that, I think, his wife was working there [at Dollar Tree], maybe that's what he said, his wife was working there and that he just stuck her up or whatever and took off, whatever. . . . I think he said he called there to see what time they got off and that, I think that was it. He called to see what time she got off.

[9] Davis, however, elected not to have the jury instruction given, reasoning that it would only call more attention to the matter.

11

**FOLLOWED BY TEN (10) YEARS OF POST-RELEASE SUPERVISION, WITH FIVE (5) YEARS SUPERVISED AND FIVE (5) YEARS UNSUPERVISED, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**