# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00511-SCT

*MICHAEL SHANE RICHARDSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2010 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/15/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Michael Shane Richardson was convicted by a jury in the Circuit Court of Lowndes County of capital murder under Mississippi Code Section 97-3-19(2)(e) (Rev. 2006), and of being a convicted felon in possession of a firearm under Mississippi Code Section 97-37-5(1) (Rev. 2006).  The State sought the death penalty at the sentencing phase, but the jury returned a verdict of life imprisonment without the possibility of parole for the capital-murder charge. The trial judge sentenced Richardson to serve a term of life without parole for the capital-murder conviction, and to serve a term of ten years imprisonment for the

felony-possession-of-firearm conviction. These two sentences were ordered to be served consecutively, all in the custody of the Mississippi Department of Corrections. After the trial court denied Richardson's motion for a new trial, or in the alternative, motion for judgment notwithstanding the verdicts, Richardson perfected this appeal, alleging errors at the trial-court level. Finding Richardson's assignments of error to be without merit, we affirm the judgment of the Circuit Court of Lowndes County.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Harvey Evans and his girlfriend, Sherrie Halverson, lived together in a neighborhood in Columbus. Michael Shane Richardson lived near the couple and had befriended them. Occasionally, Evans would help Richardson financially. On September 19, 2006, at approximately 2:00 p.m., Richardson knocked on Evans's door. Halverson answered the door, let Richardson inside, and then left the room, leaving Richardson and Evans alone. Soon thereafter, Halverson heard Evans "hollering" and came back into the room to find Evans on the floor with Richardson standing over him. A baseball bat was rolling on the floor near the two men. Richardson then left the home. After Richardson left, Evans told Halverson that Richardson had hit him in the head. The two wallets that Evans usually carried were missing, along with all of his money. Evans was hospitalized and died on January 4, 2007, from injuries related to the September 19, 2006, attack.

¶3. Later in the day of the attack, Richardson and Arthur Ray Price met at Beverly Gurley's home, and the two men used cocaine together. Price testified that his brother-in-law had delivered the drugs to Gurley's home at Richardson's request and that Richardson had

2

paid for all of the drugs. Richardson admitted to Price that he had robbed a man and had taken all of his money.

¶4. During the same afternoon, Richardson also went to Barbara Tenney's home. From Tenney's home, Richardson, Tenney, and Sarah Gibson traveled together to visit Tenney's friend in Alabama. Gibson testified that she and Richardson had smoked crack cocaine when they were on their way back to Mississippi and that Richardson had told her, "I done something bad, Sarah." Gibson also testified that Richardson had appeared to be upset and was shaking. After returning to Mississippi later that afternoon, Richardson and Gibson smoked crack cocaine again. The two then went to an apartment complex, where Richardson purchased two guns from men standing outside the complex. Richardson and Gibson then went to a Super 8 motel. Richardson's friend, McKenzie Barham, joined Richardson and Gibson at the motel, where the three smoked more crack cocaine.

¶5. Richardson eventually ended up at Barham's house. Barham testified that Richardson had two guns with him when he arrived and that Richardson threw one of them into her backyard. She also testified that Richardson had given her a one-hundred-dollar bill to pay for gasoline and cigarettes, and that Richardson was the only person who had paid for the drugs that she used on September 19, 2006.

¶6. On September 20, 2006, Richardson called 911 and told the operator that he needed the police to come pick him up because he had committed a crime. Richardson was at a convenience store in Columbus when he called 911. When the police arrived, Richardson told Investigator Terry Dentry that he wanted to turn himself in. Investigator Tony Cooper

3

testified that Richardson had asked about Evans's condition and that Richardson had kept apologizing.

¶7.     Richardson was then taken to the Lowndes County Sheriff's Department, where he was read his *Miranda*[1] rights.  Richardson told Investigator Cooper that he wished to waive his *Miranda* rights, and he signed a waiver-of-rights form.  Richardson then told Investigator Cooper about the events of the previous day.  Investigator Cooper typed a statement of Richardson's account, and Richardson signed it.  In the statement, Richardson claimed that a man named Kenny Jones had known Richardson was going to attack Evans and take Evans's money.  Richardson stated that he and Jones were supposed to meet after the robbery and that Jones was supposed to distribute the money to other people.  Richardson admitted that he had hit Evans in the head with a baseball bat and had taken both of Evans's wallets.  Richardson then explained to whom he had given the money and what he had purchased with the money.  Richardson concluded by saying, "I didn't know I had hurt Harvey as bad as I did."

¶8.     Barbara Tenney testified for the defense.  Tenney and Jones had been dating in 2006.  On September 19, 2006, Jones awakened Tenney and asked to borrow her car to go to the store.  When Jones returned, he had $500 to $600 with him.  Tenney also admitted to driving Richardson and Gibson to Alabama later that same day.  Tenney testified that Richardson had stated that he needed new pants because there was blood on his.  Tenney also testified that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

Richardson had stated, "I hope he didn't die. His eyes rolled back in his head when I hit him."

¶9. Richardson testified in his own defense. Richardson stated that he and Evans were friends, and that Evans and Halverson had given him the baseball bat for protection. Richardson testified that he had conversations with Kenny Jones both before and after the robbery. During cross-examination, Richardson admitted that he had hit Evans with a baseball bat and had taken Evans's wallets. He testified that, after the robbery, someone else was supposed to take the money and distribute it. Richardson also admitted to buying two guns on the same day as the robbery.

¶10. While incarcerated, Richardson wrote Investigator Cooper two letters. In one, Richardson inquired about his bail and stated, "I am very sorry about what I done now." In the other letter, Richardson stated that he had conceived the idea of the robbery on his own and that he was sorry that he had told Kenny Jones what he was going to do.

¶11. Dr. Steven Hayne performed an autopsy on Evans and testified to the cause and manner of death at trial. According to Dr. Hayne, the cause of Evans's death on January 4, 2007, was blunt-force trauma to the head. Dr. Hayne determined the manner of death to have been homicide. The State also presented evidence that Richardson previously had been convicted of a felony – aggravated assault in 2001.

¶12. The jury found Richardson guilty of capital murder and being a felon in possession of a firearm. The State sought the death penalty at the sentencing phase, but the jury returned a verdict stating that Richardson should serve a sentence of life in prison without the possibility of parole for capital murder. The trial judge subsequently sentenced Richardson

5

to serve consecutive sentences of life imprisonment without parole for capital murder, and ten years for being a felon in possession of a firearm. Richardson's motion for a new trial, or in the alternative, motion for judgment notwithstanding the verdicts, was denied.

## DISCUSSION

¶13.    On appeal, Richardson asserts that the trial court erred in: (1) denying Richardson's motion to suppress his statement; (2) refusing to sever Counts I and II of the indictment; (3) denying Richardson's motion in limine to exclude evidence of other crimes; and (4) admitting a photograph of the victim's brain.

### I.    WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS RICHARDSON'S STATEMENT.

¶14.    We apply the following standard when reviewing a trial court's ruling on a motion to suppress: "[S]ince the trial court sits as the fact-finder when determining the issue of whether an accused's confession has been intelligently, knowingly and voluntarily given, we will only reverse the trial court's determination of this issue when such determination is manifestly wrong." *Glasper v. State*, 914 So. 2d 708, 716 (Miss. 2005) (citing *Manix v. State*, 895 So. 2d 167, 180-81 (Miss. 2005)) (other citations omitted).  We "will not disturb the trial court's determination on the admissibility of a confession unless the trial court applied an incorrect legal standard, committed manifest error, or rendered a decision which was contrary to the overwhelming weight of the evidence." *Glasper*, 914 So. 2d at 716 (citing *Thorson v. State*, 895 So. 2d 85, 115 (Miss. 2004)) (other citations omitted).  A confession is admissible if the State "has proven beyond a reasonable doubt that the accused's confession was voluntary by showing that such confession was not the product of promises, threats or inducement." *Id.*

6

at 717 (citing *Manix*, 895 So. 2d at 180) (other citations omitted). With regard to the trial court's findings on the admissibility of a confession, we have stated that "[w]here, on conflicting evidence, the [trial] court makes such findings, this Court generally must affirm." *Lesley v. State*, 606 So. 2d 1084, 1091 (Miss. 1992) (citing *Stokes v. State*, 548 So. 2d 118, 122 (Miss. 1989)).

¶15. Richardson argues that the trial court erred by denying his motion to suppress, because the statement that he made to police is inadmissible under *Miranda*. Richardson supports this contention by claiming that his requests for counsel were not honored. After Richardson called 911 and turned himself over to police, he was taken into custody and given his *Miranda* rights. Richardson then made a statement to Investigator Cooper. Investigator Cooper typed the statement on a Lowndes County Sheriff's Department form, and Richardson signed the statement. Richardson admitted in this statement to hitting Evans on the head with a baseball bat and taking both of Evans's wallets. Richardson signed a waiver-of-rights form prior to signing the typed statement.

¶16. The trial court held a pretrial suppression hearing on Richardson's motion and heard testimony from Richardson, Investigator Cooper, and Deputy Greg Wright. Richardson testified at the hearing that he repeatedly had asked Investigator Cooper and the other investigating officers for "legal assistance." Richardson testified that he first had asked to speak with a "legal assistant" when the police initially had arrived to arrest him after his 911 call. Richardson said that an officer had told him that he would be able to speak with an attorney at the Sheriff's Department. Richardson testified that when he had asked to speak with an attorney at the Sheriff's Department, the investigator immediately had left the room.

7

He testified that he had made his requests again and that the investigator had continued to question him. Richardson also testified that he had been read his *Miranda* rights initially at the convenience store where he was picked up by police and that he was not sure if he had been read his *Miranda* rights at the Sheriff's Department.

¶17. When asked why he had made a statement to Investigator Cooper after requesting an attorney, Richardson stated:

> He -- insisted I make the statement. He insisted I make the statement. Our -- well, I -- that was -- that was pretty much it. He -- he just, you know – he pretty much insisted I make a statement. I have told him I'd like to sit there and talk to my mother and a law -- or a -- you know, a legal assistance, but typically mainly my mother, probably, but, you know – and he just insisted I make -- I make the statement.

When asked at the hearing why he had signed a waiver of rights, Richardson invoked the Fifth Amendment.

¶18. Investigator Cooper typed Richardson's statement and witnessed Richardson's waiver of rights. Cooper testified that Richardson had requested legal assistance neither at the convenience store nor at the Sheriff's Department. He also testified that he never insisted that Richardson make a statement. Deputy Wright testified that he never insisted that Richardson give a statement and that he never had heard Richardson request counsel.

¶19. After hearing all of the testimony, the trial court denied Richardson's motion to suppress. The trial court found that Richardson had not invoked his right to counsel and that Richardson knowingly, intelligently, and voluntarily had given his statement to police.

¶20. The trial court was presented with contradicting testimony regarding the voluntariness of Richardson's statements. On one side, Richardson consistently claimed that he had asked

8

to speak with an attorney and that his requests had been ignored. On the other hand, two law-enforcement officers testified that Richardson never had made these requests and that he voluntarily had given the statement, signed a written statement, and signed a waiver of rights. When viewing all of the evidence as a whole from the record before us, we find that the trial court did not abuse its discretion in denying Richardson's motion to suppress his statement. Accordingly, we find that this issue is without merit.

## II.  WHETHER THE TRIAL COURT ERRED IN REFUSING TO SEVER COUNTS I AND II OF THE INDICTMENT.

¶21.    We review a trial court's denial of a motion to sever multiple counts of an indictment for abuse of discretion. *Rushing v. State*, 911 So. 2d 526, 532 (Miss. 2005) (citing *Brawner v. State*, 872 So. 2d 1, 6-7 (Miss. 2004)). Both multicount indictments and multi-offense trials are allowed under certain circumstances. *Id.* "In trials concerning multi-count indictments, severance is unnecessary in Mississippi if the acts or transactions are connected together as part of a common scheme or plan and if the indictment was otherwise proper." *Id.* The authority to charge and try a defendant for multiple counts in the same indictment is provided by Mississippi Code Section 99-7-2 (Rev. 2007), which provides:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
>
> (3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.

(4) The jury or the court, in cases in which the jury is waived, shall return a separate verdict for each count of an indictment drawn under subsection (1) of this section.

¶22. In *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991), we recommended the following procedure to trial judges who are faced with an issue of severance:

> [W]e recommend that a trial court hold a hearing on the issue. The State, then, has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions.

When deciding whether a multicount indictment was proper, the trial court should consider the following factors: (1) the time period between the offenses, (2) whether the evidence proving each count would be admissible to prove each of the other counts, and (3) whether the crimes are interwoven. *Id.* (citing *Allman v. State*, 571 So. 2d 244, 248 (Miss. 1990); *McCarty v. State*, 554 So. 2d 909, 914-16 (Miss. 1989)).

¶23. Richardson contends that the trial court erred in denying his motion to sever Counts I and II of his indictment. Richardson's indictment contains two counts: (1) capital murder with the underlying felony of robbery under Mississippi Code Section 97-3-19(2)(e) (Rev. 2006);[2] and (2) felon in possession of a firearm under Mississippi Code Section 97-37-5(1)

---

[2] Count I states in part:

> that MICHAEL SHANE RICHARDSON late of the County aforesaid, on or about the 19th day of September, 2006, in the County and State aforesaid, did unlawfully, willfully, and feloniously, with or without the design to effect death, kill and murder Harvey Evans, a human being, without authority of law and not in necessary self defense, while engaged in the commission of the crime of Robbery, in violation of Section 97-3-19 MCA 1972 as amended; contrary to the form of the statutes in such cases and provided, and against the peace and dignity of the State of Mississippi.

10

(Rev. 2006). Richardson filed a pretrial motion to sever the two counts, arguing that the nature of the two crimes prevented him from having a fair trial and that the crimes were not based on the same act or transaction. A pretrial hearing was held on the motion, and the trial court denied Richardson's motion to sever.

¶24. On appeal, Richardson argues that the trial court abused its discretion in denying the motion because of the "explosive nature" of the capital-murder charge. Richardson contends that the two crimes were separate and distinct and that the evidence needed to establish the second count of being a felon in possession of a firearm – specifically evidence of his prior aggravated-assault conviction – was unduly prejudicial.

¶25. After Richardson had filed his motion to suppress, the trial court held a pretrial *Corley* hearing.[3] After both sides presented their arguments on the motion, the trial court discussed

Count II states in part:

> that MICHAEL SHANE RICHARDSON late of the county aforesaid, on or about the 19th day of September, 2006, in the County and State aforesaid, did unlawfully, willfully, and feloniously, have in his possession one Lorcin .380 pistol bearing serial number S36216 in violation of Section 97-37-5 MCA 1972 as amended, while he, the said MICHAEL SHANE RICHARDSON was a convicted felon having been convicted in the Circuit Court of Lowndes County, Mississippi in cause number 2001-0099-CRI for the crime of Aggravated Assault, a felony, and sentenced on July 27, 2005 to a term of years in the Mississippi Department of Corrections; contrary to the form and statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.

[3] At the hearing, Richardson, through counsel, first presented his argument that the counts should be severed, and then the State presented its argument. *Corley* directs that the State must first present a prima facie case showing that the offenses may be tried together and that the defendant may rebut the State's case. *Corley*, 584 So. 2d at 772. Although the trial court in today's case did not follow the exact procedure outlined in *Corley*, the State and Richardson were still able to present both sides of their arguments to the trial court. Richardson's counsel also initiated the discussion of the motion at the hearing and did not

11

each of the *Corley* factors. The trial court first discussed the time period between the occurrences (the first *Corley* factor) and found that the time period was "insignificant." *Corley*, 584 So. 2d at 772. We agree with the trial court's finding. Richardson robbed Evans around 2:00 p.m. and purchased two guns later that same afternoon. In *Patrick v. State,* 754 So. 2d 1194, 1196 (Miss. 2000), we held that separate counts of aggravated assault, armed robbery, burglary, and grand larceny properly were tried together when the crimes occurred within a seven-hour period. Notably, the crimes in *Patrick* involved three separate incidents, each having different victims. *Id.* Similar to *Patrick*, the crimes in today's case occurred within a relatively short time period. Thus, the trial court did not abuse its discretion in finding that the period of time between the two crimes did not warrant severance of the two counts in Richardson's indictment.

¶26. The trial court then considered the second *Corley* factor – whether the evidence proving each count would be admissible to prove each of the other counts. *Corley*, 584 So. 2d at 772. The trial judge made the following statement when considering the second factor:

> There may be some different witnesses and different evidence, because in the firearm charge you're going to have to show that he was prior-convicted of some felony offense, and I -- so you're going to have some different witnesses that may testify that may not necessarily testify about the capital murder. There may be some additional witnesses that would be brought in.

---

object to presenting the defense's argument before the State presented its argument. *See Rushing*, 911 So. 2d at 533 (denial of motion to sever upheld despite the trial court not following the exact procedural guidelines in *Corley*). Richardson also does not argue on appeal that the exact *Corley* procedure was not followed at the trial court.

12

Richardson now contends that the evidence of his prior aggravated-assault conviction would not have been admissible in a capital-murder trial. He thus argues that the evidence of his prior felony conviction was unduly prejudicial.

¶27. At trial, evidence of Richardson's prior felony conviction was introduced to establish that he previously had been convicted of a felony when he purchased the firearms on September 19, 2006. During the pretrial severance hearing, the trial court noted that, if the defense wished to stipulate that Richardson had a prior felony conviction, the State would be bound by that stipulation and the court would allow it. The defense, however, never attempted to stipulate to this fact. Although Richardson filed a pretrial motion to sever the counts, Richardson did not object to the entry of evidence of his aggravated-assault conviction at trial. Further, Richardson never requested that a limiting instruction be given to the jury.

¶28. In *Williams v. State*, 991 So. 2d 593, 605-06 (Miss. 2008), we addressed when trial courts should allow the parties to stipulate to a defendant's prior conviction and issue limiting instructions on the prior conviction. We stated:

> Where evidence of a prior conviction is a necessary element of the crime for which the defendant is on trial (i.e., possession of a firearm by a convicted felon), but the evidence of the specific nature of the crime for which the defendant was previously convicted (i.e., armed robbery), is not an essential element of the crime for which the defendant is on trial, as it is in DUI cases, the trial court should accept a defendant's offer to stipulate and grant a limiting instruction.

*Id.* In *Williams*, the defendant was on trial for possession of a firearm by a convicted felon and offered to stipulate to his status as a convicted felon. *Id.* at 606. The trial court refused to allow the stipulation, and we reversed. *Id.*

13

¶29.    In *Armstead v. State*, 978 So. 2d 642, 648-49 (Miss. 2008), we held that multiple counts did not need to be severed simply on the basis that evidence in one count would not be admissible as to the other count if the two were tried separately.  We stated that:

> There is no authority for restricting the multi-count-indictment statute because some element of proof necessary as to one charge would be inadmissible on another charge if tried separately.  Whenever a defendant is tried on a multi-count indictment, the possibility that a jury will infer guilt on all counts from guilt on one individual count does not warrant reversal so long as the jury is instructed that each count must be considered separately, and each count is supported by substantial evidence and proven beyond a reasonable doubt.

*Id.* at 649 (internal citations omitted).

¶30.    In *Golden v. State*, 968 So. 2d 378, 383 (Miss. 2007), the defendant was tried for two counts of rape, occurring approximately three hours apart.  While discussing whether the trial court had erred in refusing to sever the two counts, we stated that the issue of whether the evidence to prove one count would be admissible to prove the other is "problematic." *Id.* During a *Corley* hearing, the trial court in *Golden* recognized that the two counts would have some evidence in common and some evidence not in common.  *Id.*  On appeal, we found that "the trial court took into account the factors which were common, and those which were not, and we are unable to say that the trial court abused his discretion." *Id.*

¶31.    Based on the forgoing discussion, we cannot say that the trial court in today's case abused its discretion by finding that Richardson's counts should be tried together, despite evidence being needed to prove each count that would not be admissible to prove the other count.  The trial court recognized that there would be different witnesses and different evidence for the two crimes.  We note, however, that some of the witnesses at trial testified concerning both the murder and the firearm charges.  For example, Investigator Cooper gave

14

significant testimony as to both counts. He testified about Richardson's confession, in which

Richardson admitted to hitting Evans in the head with a baseball bat and stealing both of

Evans's wallets. Investigator Cooper also located both of the guns that Richardson had

purchased. Sarah Gibson also gave testimony relating to both counts. She testified that, on

the day of the attack, Richardson had stated to her that he had "done something bad." She

also testified that she later had witnessed Richardson's purchase of two guns. Also,

Richardson's counsel did not request a limiting instruction, nor did Richardson's counsel

offer to stipulate that Richardson had a previous felony conviction. Also, defense counsel

did not object at trial to evidence of Richardson's previous conviction. *See Harper v. State*,

478 So. 2d 1017, 1025 (Miss. 1985) (citing *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975))

("[T]he lower court may not be put in error for failure to instruct the jury on any point of law

unless specifically requested in writing to do so."). *See also Rushing*, 911 So. 2d at 539

(citing *Brown v. State*, 890 So. 2d 901, 913 (Miss. 2004)).

¶32.    For the sake of emphasis, we state again that, during the pretrial severance hearing,

the trial court offered to allow defense counsel to stipulate that Richardson had a prior felony

conviction, and if so stipulated, then the State would be bound by that stipulation. However,

defense counsel never stipulated to this fact. We quote the trial judge on this point:

> But if the defense wishes to stipulate that [Richardson] has a prior conviction,
> then the State would be bound by that stipulation, as the Court recalls, from the
> U.S. Supreme Court.[4]  But I -- I think they meet -- the Court finds that they
> meet that test, that they're interwoven, that the time period is insignificant, and

---

[4]The trial court most likely had in mind *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). *See also Rigby v. State*, 826 So. 2d 694, 699-703 (Miss. 2002).

that there's going to be some bleed-over in the witnesses that can prove one count and the other.

Presented with this golden opportunity to stipulate before the jury to the prior felony conviction, without any reference to the nature of the offense (aggravated assault) for which Richardson was convicted, or any other details of the prior conviction, the defendant, through counsel, chose not to stipulate to the prior conviction for the purpose of proof of an element of the offense of felony firearm possession.

¶33. Finally, we take note that the trial court did instruct the jury that the two counts were separate offenses and should be considered separately.

¶34. The final *Corley* factor that the trial court should consider is whether the crimes are interwoven. *Corley*, 584 So. 2d at 772. In *Rushing*, 911 So. 2d at 537, we found that three counts of prescription forgery occurring in a five-month period were interwoven because they "involve too many similar factors when viewed together, to be anything but clearly linked and part of the same common scheme or plan." In *Harris v. State*, 908 So. 2d 868 (Miss. Ct. App. 2005), the Court of Appeals found that the trial court did not err in denying a motion to sever a felon-in-possession-of-a-handgun charge from other counts of burglary and sale of a stolen firearm. The defendant in *Harris* broke into a mobile home and stole a Glock 19 pistol. *Id.* at 870. Approximately two months later, the defendant sold the stolen gun to a police informant. *Id.* at 871. In finding that the trial court did not abuse its discretion by refusing to sever the counts, the Court of Appeals stated:

> The common thread running through each of the counts is the gun. It was taken in the burglary, it was possessed, and it was sold. Each of the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. It seems that the scheme or

plan was to commit a burglary and get items which could be sold illegally for cash.

*Id.* at 875.

¶35. Similar to *Harris*, we find that Richardson's charges have a "common thread" – the money stolen from Evans. The underlying felony in Richardson's murder charge is robbery. After Richardson hit Evans on the head with a baseball bat, he stole Evans's wallet, which contained a large amount of cash. Shortly thereafter, Richardson used the money he had stolen from Evans, among other things, to purchase two guns. Based on this connection, we find that the trial court did not abuse its discretion in finding that Richardson's two charges were interwoven.

¶36. In the background of our analysis, we also consider the policy behind prohibiting multicount indictments in some cases, but allowing multicount indictments in other cases. In *Corley*, we stated:

> We have been, and remain, unwilling to allow separate and distinct offenses to be tried in the same criminal proceeding. We do so in order to avoid potential problems of a jury finding a defendant guilty on one unproven count due to proof of guilt on another, or convicting a defendant based upon the weight of the charged offenses, or upon the cumulative effect of the evidence.

*Corley*, 584 So. 2d at 772 (citations omitted). Based on the facts of this case – most notably, the overwhelming evidence supporting the jury verdicts for both counts – we find that the well-settled law in *Corley*, protecting defendants from convictions based on evidence of separate and distinct offenses, is not in jeopardy.

¶37. While we have found that the overwhelming weight of the evidence supports the jury verdicts in today's case, we also note, alternatively, that even if we were to find that the trial

17

court had abused its discretion in today's case (which we do not find), the result would be harmless error. "Harmless-errors are those which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Williams*, 991 So. 2d at 599 (quoting *Tran v. State*, 962 So. 2d 1237, 1247 (Miss. 2007)). We "have the duty to be fair, not only to the defendant, but to the State as well." *Tran*, 962 So. 2d at 1246. "Harmless-error analysis is often necessary to prevent unfair prejudice to the State, and the State is certainly prejudiced where convictions are reversed based on errors which do not affect the substantial rights of the parties." *Id.* (citations omitted). "In conducting [a] harmless-error analysis, this Court has the power and duty to review the record de novo in order to determine the error's effect." *Id.* at 1247 (citations omitted). Both of Richardson's convictions are supported by overwhelming evidence. Richardson confessed to both crimes. He also admitted to several other witnesses that he had robbed Evans. Richardson inquired of Investigator Cooper as to Evans's condition and apologized several times for what he had done to Evans. Barbara Tenney, a witness for the defendant, testified, *inter alia*, that Richardson had informed her that he needed new pants because of blood on his pants. Tenney also testified that Richardson had told her that "I hope [Evans] didn't die. His eyes rolled back in his head when I hit him." There was also eyewitness testimony that he had purchased handguns on the day of the murder. Accordingly, even assuming, arguendo, that the trial court in today's case erred in denying Richardson's motion to sever, we find the error was harmless and did not result in Richardson's trial being fundamentally unfair.

18

¶38. In sum, we find that the trial court did not abuse its discretion by denying Richardson's motion to sever. The trial court held a pretrial *Corley* hearing and properly considered all of the *Corley* factors. This issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING RICHARDSON'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER CRIMES.

¶39. We review a trial court's admission or exclusion of evidence for abuse of discretion. *Murray v. State*, 849 So. 2d 1281, 1288 (Miss. 2003). "The trial court's discretion must be exercised within the confines of the Mississippi Rules of Evidence." *Davis v. State*, 40 So. 3d 525, 529 (Miss. 2010) (citing *Murray*, 849 So. 2d at 1288). "We will reverse only if such discretion has been abused and a substantial right of a party has been affected." *Id.*

¶40. Evidence must be relevant to be admissible. Miss. R. Evid. 402. Absent an exception, all relevant evidence is admissible. Miss. R. Evid. 402. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Miss. R. Evid. 403. Moreover, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Miss. R. Evid. 404 (b). "Evidence of other crimes, wrongs, or acts of the defendant offered pursuant to Rule 404(b) may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Davis*, 40 So. 3d at 529-30 (citing Miss. R. Evid. 403).

19

¶41. Richardson contends that the trial court abused its discretion in allowing evidence of other crimes and bad acts – in particular, the purchase and use of cocaine and possession of firearms. Richardson filed a motion in limine to exclude evidence of these acts, and a hearing was held on the motion. At the hearing, Richardson argued that the evidence of other crimes was highly prejudicial and should be excluded. The trial court denied Richardson's motion. The trial court performed a Rule 403 balancing test and found that the evidence relating to the cocaine and guns was prejudicial. But the trial court then found that the evidence had probative value and that the probative value of this relevant evidence was not substantially outweighed by the danger of unfair prejudice.

¶42. On appeal, Richardson contends that the trial court abused its discretion because the evidence of the robbery alone was sufficient to establish motive for the murder. Richardson also claims that the State "never clearly articulated that Richardson's motive was to get money to buy drugs and guns," and any such assertion by the State was "purely speculation."

¶43. Richardson cites *Snelson v. State*, 704 So. 2d 452 (Miss. 1997), in support of his argument. In *Snelson*, we found that the introduction of evidence of a defendant's cocaine purchase after he had committed a murder was reversible error. *Id.* at 455. In *Snelson*, the defendant stole several items, including guns, from a man's home with the intention of selling the stolen items for cash. *Id.* at 453. The defendant then shot and killed the homeowner. *Id.* After selling the guns, the defendant used the proceeds to purchase cocaine. *Id.* at 455. This Court found that it was error for the trial court to allow the evidence of the defendant's purchase and use of cocaine, stating that:

We hold that the evidence which showed that Snelson bought and used cocaine after he had sold the stolen guns did not have the tendency to make any fact that was of consequence to the determination of whether Snelson killed Stephen Goode more probable or less probable than it would without the introduction of such evidence.

*Id.*

¶44.    ***Snelson*** distinguished ***Mack v. State***, 650 So. 2d 1289 (Miss. 1994), finding that "[u]nlike ***Mack***, there is no evidence showing that the primary objective of Snelson's actions was to obtain money to buy cocaine." ***Snelson***, 704 So. 2d at 455.  In ***Mack***, the defendant killed a man during a robbery at the man's home. ***Mack***, 650 So. 2d at 1294.  Mack then used the money he had stolen from the victim to purchase cocaine. *Id.* at 1313.  On appeal, Mack argued that the trial court had erred in admitting evidence that he had purchased and used cocaine, because the underlying felony of robbery was sufficient to establish motive for murder. *Id.* at 1311.  There was evidence that Mack had smoked cocaine prior to the murder; that he wanted to purchase more cocaine but did not have the funds; and that, after the murder, Mack purchased more cocaine. *Id.* at 1313.  Although we did caution against the use of such evidence, we found that it was not reversible error for the trial court to admit the evidence of Mack's purchase and use of cocaine, stating that:

> This is an area fraught with danger, and prosecutors and trial courts alike should approach with caution any evidence of other crimes offered for the purpose of proving motive for a robbery.  Robbery has its own motive – the attainment of something of value.  It matters not whether the perpetrator is poor seeking the cost of a meal, or rich in search of a thrill.  The use to which that value is put or to be put ordinarily has no relevance. *Here, because of the close connection of a specific monetary objective and because of the overwhelming evidence of guilt, we conclude that the error in admitting this evidence, if any, is harmless beyond a reasonable doubt.*

*Id.* (emphasis added).

21

¶45. With facts similar to *Mack*, this Court in *Conner v. State*, 632 So. 2d 1239, 1273-74 (Miss. 1993), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158 (Miss. 1999), found that evidence of the defendant's cocaine use on the same day that he had robbed and murdered an elderly woman was admissible to show pecuniary motive. The prosecution in *Conner* presented evidence of the defendant's "penniless condition before the crime" and "his improved financial situation thereafter." *Id.* at 1274. In finding that the evidence of drug use was entered to show pecuniary motive to rob and murder, we stated that the evidence was "[o]bviously . . . relevant to the core issue of whether Conner committed the crime with which he is charged." *Id.*

¶46. We find the facts of today's case similar to those in *Conner*. Evidence was presented at trial that, typically, Richardson did not carry large amounts of money, and that Evans had given Richardson financial help in the past. Arthur Price testified that, after the murder and robbery, Richardson had stated to him that "he had robbed somebody and that he had some money to get some drugs." Price also testified that Richardson had paid for all of the cocaine which was delivered to Beverly Gurley's home. McKenzie Barham testified that Richardson had given her a one-hundred-dollar bill to pay for gasoline and cigarettes and that Richardson had paid for the drugs she had used on September 19, 2006. This evidence, coupled with the testimony that Richardson had purchased the cocaine and guns shortly after he had robbed Evans, tends to show Richardson's pecuniary motive. Additionally, in his statement to law enforcement officials, Richardson had claimed that a man named Kenny Jones knew Richardson was going to attack Evans and take Evans's money. Richardson stated that he and Jones were supposed to meet after the robbery and that Jones was supposed to distribute

22

the money to other people. Thus, evidence of Richardson's actions after the crimes was relevant for the jury to hear "the whole story" to compare Richardson's post-crime actions concerning how he used the money with his statement to law enforcement personnel that the money taken in the murder and robbery was to be distributed "to other people."

¶47. Moreover, we have held that "'the State has a legitimate interest in telling a rational and coherent story of what happened.'" *Davis*, 40 So. 3d at 530 (quoting *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986)). "'Where substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given though it may reveal or suggest other crimes.'" *Davis*, 40 So. 3d at 530 (quoting *Brown*, 483 So. 2d at 330). The evidence of Richardson's conduct after the murder provided the jury with a "rational and coherent story of what happened." *Id.* Richardson's counsel also did not object to any evidence of Richardson's other crimes at trial or request a limiting instruction concerning the evidence. *See Brown v. State*, 890 So. 2d at 913 (quoting Miss. R. Evid. 105) ("The burden should properly be upon the trial counsel to request a limiting instruction . . . . '[W]hen evidence which is admissible . . . for one purpose but not admissible . . . for another is admitted, the court, *upon request*, shall restrict the evidence to the proper scope and instruct the jury accordingly.'") (Emphasis original).

¶48. Because the evidence of Richardson's other crimes showed his pecuniary motive for murdering Evans, we find that the trial court did not abuse its discretion in admitting evidence of these other crimes. Further, in light of the overwhelming weight of the evidence of Richardson's guilt, we find that any unfair prejudice resulting from the admission of other-

23

crimes evidence was harmless and does not require reversal. *See McKee v. State*, 791 So. 2d 804, 811 (Miss. 2001). Accordingly, this issue is without merit.

## IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING A PHOTOGRAPH OF THE VICTIM'S BRAIN.

¶49. We review admission of photographs by the trial court for abuse of discretion. *Chamberlin v. State*, 989 So. 2d 320, 340 (Miss. 2008). This Court should consider whether the photographs were so gruesome or inflammatory as to lack any evidentiary purpose, thus rendering them inadmissible. *McFee v. State*, 511 So. 2d 130, 134-35 (Miss. 1987). "Some probative value is the only requirement needed in order to support a trial judge's decision to admit photographs into evidence." *Chamberlin*, 989 So. 2d at 340 (quoting *Jones v. State*, 920 So. 2d 465, 476-77 (Miss. 2006) (other citations omitted)). Although reversal for the admission of gruesome photographs is rare, "photographs which have no evidentiary purpose and which only arouse the emotions of a jury should not be admitted." *Barfield v. State*, 22 So. 3d 1175, 1181 (Miss. 2009) (quoting *Sharp v. State*, 446 So. 2d 1008, 1009 (Miss. 1984)). Photographs have evidentiary value when they: (1) aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; or (3) supplement or clarify witness testimony. *Barfield*, 22 So. 3d at 1181 (citing *McIntosh v. State*, 917 So. 2d 78, 83 (Miss. 2005)).

¶50. Richardson contends that the trial court erred in admitting a photograph of Evans's brain. The photograph was taken during Evans's autopsy and showed Evans's brain after his scalp and part of his skull had been removed. The original photograph also contained an image of Evans's open chest cavity. The trial court redacted the part of the photograph

24

depicting Evans's chest cavity and admitted the rest of the photograph over Richardson's objection. Richardson now argues that the photograph was unduly prejudicial and not probative.

¶51. Richardson cites *McFee*, 511 So. 2d at 135, and *Hewlett v. State*, 607 So. 2d 1097 (Miss. 1992). In *McFee*, this Court found that two photographs depicting a rape and murder victim were "relevant and material," and thus admissible. *McFee*, 511 So. 2d at 135. Richardson cites *Hewlett* for the proposition that "photographs of a victim should not ordinarily be admitted into evidence where the killing is neither contradicted nor denied, and the corpus delicti and the identity of the deceased have been established." *Hewlett*, 607 So. 2d at 1102. Richardson correctly quotes *Hewlett*; however, the opinion continues and states: "Photographs may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in a way as to be overly prejudicial or inflammatory." *Id.* (citing *Sudduth v. State*, 562 So. 2d 67, 70 (Miss. 1990)).

¶52. In this case, the photograph was entered into evidence during Dr. Hayne's testimony. Dr. Hayne, a pathologist, performed Evans's autopsy and testified as to Evans's injuries and cause of death. Dr. Hayne was describing the injuries to Evans's brain when the State introduced the photograph. Richardson's counsel objected, arguing that the photograph was not relevant and highly prejudicial. The trial court found that the portion of the photograph depicting Evans's brain was relevant and, after performing a Rule 403 balancing test, that this portion of the photograph was admissible. *See* Miss. R. Evid. 403. Specifically, the trial court found that the photograph was relevant because Evans had died approximately three

25

and one half months after being hit in the head, and the photograph had helped to establish the age of Evans's brain injury.

¶53.   The photograph was used to supplement Dr. Hayne's testimony regarding the injury to Evans's brain.  Dr. Hayne referred to the photograph while testifying that Evans's brain injury had occurred months prior to his actual death.  The photograph showed a brown discoloration on the brain, which Dr. Hayne testified forms four to five days after the actual injury and lasts for years after the injury.

¶54.   We find that the trial court did not abuse its discretion in admitting the photograph of Evans's brain.  The trial judge weighed the probative value of the photograph against its prejudicial effect and even redacted a portion of the photograph that was not relevant.  Because the photograph had probative value and was otherwise admissible under Rule 403, we find that this issue is without merit.

**CONCLUSION**

¶55.   The trial court's admission of Richardson's statement to police was in accordance with correct principles of law and was supported by substantial evidence.  The trial court did not abuse its discretion in denying Richardson's motion to sever the two counts of his indictment or his motion in limine to exclude evidence of other crimes.  Alternatively, any error resulting from the trial court's ruling on these motions was harmless beyond a reasonable doubt because of the overwhelming evidence of guilt presented by the State.  Finally, the trial court did not abuse its discretion in admitting a photograph of the victim's brain, because the photograph had probative value which was not substantially outweighed by the danger of unfair prejudice.

26

¶56.    Accordingly, we affirm the Lowndes County Circuit Court's judgment of conviction for capital murder and felony possession of a firearm, as well as the respective sentences of life imprisonment without parole and ten years' imprisonment, to be served consecutively, all in the custody of the Mississippi Department of Corrections.

¶57.    **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF FELONY POSSESSION OF A FIREARM AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT I SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION, WEEKEND PASSES OR EARLY RELEASE OF ANY KIND. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I.**

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.**