# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00835-SCT

*DEQUANE LOMAX a/k/a DEQUAN LOMAX*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2014 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | JAMIE K. McBRIDE |
| | MATT EICHELBERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 06/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.    Dequane Lomax was indicted by a Hinds County grand jury on two counts of forcible rape in violation of Mississippi Code Section 97-3-65(4)(a) and two counts of simple assault on a law-enforcement officer in violation of Mississippi Code Section 97-3-07(1)(b).  The Hinds County Circuit Court severed Count I from Counts II, III, and IV.  Lomax then

proceeded to trial on Counts II, III, and IV in March 2014. Lomax was convicted of Count II, forcible rape, and found not guilty of Counts III and IV, simple assault on a law-enforcement officer.

¶2. We find cumulative error occurred at trial that deprived Lomax of the right to a fair trial. Therefore, we must reverse the judgment and remand this case for a new trial. Because we are remanding for a new trial, we need not address all the issues argued on appeal. Those not addressed in this opinion were fully considered by this Court and found to be without merit and/or moot. Accordingly, we limit our recitation of the facts to those we find necessary for the disposition of our decision.

## PROCEDURAL HISTORY

¶3. In May 2013, a Hinds County grand jury indicted eighteen-year-old Dequane Lomax for two counts of forcible rape in violation of Mississippi Code Section 97-3-65(4)(a) and two counts of simple assault on law-enforcement officers in violation of Mississippi Code Section 97-3-7(b).

¶4. Count I alleged that on September 10, 2012, Lomax forcibly raped seventeen-year-old T.L. at an abandoned building in Jackson, Mississippi.[1] Count II alleged that on January 20, 2013, Lomax forcibly raped fifteen-year-old S.C. at her residence in Jackson, Mississippi.[2] Counts III and IV alleged that Lomax assaulted two law-enforcement officers, Detective

---

[1] Initials are used in place of the name of the minor. According to the indictment, T.L. was born on October 22, 1984; however, the trial court allowed the State to amend the indictment and properly reflect that T.L. actually was born in 1994.

[2] Initials are used in place of the name of the minor.

Shivon Hodges and Detective Ella Thomas, on February 7, 2013, in violation of Mississippi Code Section 97-3-7(b).

¶5.     Count I was severed from Counts II through IV.  Lomax requested that the simple-assault charges, Counts III and IV, be severed from the forcible-rape charge, Count II. The trial court refused to sever the simple-assault charges from the rape charge because the simple-assault charges arose from the investigation of the forcible-rape charge.  The jury found Lomax guilty of forcible rape against S.C. but not guilty of simple assault against the law-enforcement officers.

**FACTS**

¶6.     S.C. and Lomax first became acquainted through Facebook.  In January 2013, S.C. met Lomax for the first time outside her aunt's house. S.C. testified that on January 20, 2013, Lomax texted her and asked if he could visit her.  S.C. agreed but told him she would text him when her mother, Barbara Carter, left for work. Once her mother left, S.C. texted Lomax, and he arrived approximately five to ten minutes later.  Lomax sat in a chair in the middle of the living room, and S.C. sat on the couch.

¶7.     Lomax asked S.C. for a hug, but she told him no.  Lomax then sat next to S.C. on the couch and gave her a hug. S.C. asked Lomax to leave, but he asked permission to stay a few more minutes and she agreed.  After several failed attempts to kiss S.C., Lomax grabbed S.C.'s legs and pulled her toward him, attempting to kiss her again. He said, "You give me a kiss and I'll stop." S.C. replied, "No, get off me." Lomax tried to remove S.C.'s pants, but she kicked him and told him to get off her. Lomax placed his hands around S.C.'s neck.  S.C.

3

let go of her pants and grabbed Lomax's hands. Lomax removed S.C.'s pants, and she continuously kicked him.

¶8. S.C. agreed to let Lomax "do it" if he would allow her to get a glass of water. When S.C. was free, she ran into the kitchen and grabbed a knife off the kitchen counter. Lomax grabbed the knife, pushed S.C. against the wall, and held the knife against her neck. With the knife still in his hand, Lomax grabbed her hand, sat her in the chair, and told her, "[y]ou can suck my d*** or you either f*** me." S.C. told him that she wanted to do neither and wanted him to stop, but Lomax led her to her bedroom and pushed her on the bed.

¶9. S.C. attempted to resist Lomax, but he began choking her again. He held her down and glided the knife over her lower back and raped her. Within minutes, Lomax put his clothes on and left the room. S.C. grabbed her phone to call for help, but Lomax immediately returned to the room, grabbed the phone, and erased his number from S.C.'s cell phone. Lomax grabbed the knife and walked out of the room, and S.C. followed. Lomax threw the knife on a chair, unlocked the door with his hands in his shirt and left.

¶10. S.C. called her cousin, Trinita Johnson, and told her that she had been raped. Trinita immediately came to S.C.'s house and called Carter. When Carter arrived, S.C. told her that she had been raped but did not tell her who had raped her. Carter took S.C. to the University of Mississippi Medical Center (UMMC), where S.C. was examined by a sexual-assault nurse-practicioner. S.C. testified to those facts at trial.

¶11. On February 4, 2013, S.C. was interviewed by Regan Doleac, a sexual-assault nurse-practicioner with the Children's Justice Center (CJC). The next day, S.C. was interviewed by

4

Erin Gowen, a licensed social worker and forensic interviewer with the Children's Advocacy Center (CAC). The CJC interview was audio recorded, and the CAC interview was video recorded. S.C. testified at trial about both interviews.

¶12. On cross-examination, Lomax's trial counsel attempted to question S.C. about what occurred at the end of her interview at the CAC. The State objected and a proffer was held outside the presence of the jury by which S.C. testified about talking to herself when Gowen left the room. S.C. told the trial court that she was not talking about the rape or anything to do with Lomax. Rather, she was talking about "other relationships that were happening in my life," including a situation with her best friend. S.C. told the court she was tired of retelling her story at the time and was "pissed off" and wanted to leave the interview. During the proffer, S.C. testified that when she gets upset she talks to herself and hits walls.

¶13. The trial court viewed the video recording outside the presence of the jury. Lomax's attorney argued that the video was relevant with respect to whether or not S.C. is credible. Defense counsel argued that it was obvious S.C. was talking about Lomax when Gowen left the room: "A reasonable person could certainly believe that she was inferring [sic] to what she'd just spent the last 30 minutes talking to Ms. Gowen about. There certainly would be ways for [the State] to contradict that. But, Your Honor, I certainly believe it passes the relevancy test."

¶14. The State contended that the "ramblings" on the recording were highly prejudicial and that it was very difficult to ascertain what S.C. was saying. The State argued as to whether these "ramblings" were even statements.

¶15. Lomax argued for admission of the video based on Rule 613(b) of the Mississippi Rules of Evidence. The trial court disagreed and found as follows:

> I listened to the video -- or rather I viewed the video and listened to the audio. And what I saw after carefully viewing it in those roughly two minutes were unintelligible, emotional ramblings in a completely unrelated context. I couldn't hear what was represented by counsel as being clear. I heard a few words completely out of context, and I -- I'm going to sustain the State's motion.
>
> I don't believe those were -- those words are relevant to the issue before the [c]ourt. And even if they were, I believe under 403 that evidence should be excluded because I believe any probative value would be substantially outweighed by confusion of the issues or misleading the jury. So I'm going to sustain the State's motion.

¶16. In addition to S.C.'s testimony, the State presented testimony from numerous individuals, including: S.C.'s mother, S.C.'s cousin, a sexual-assault nurse who had examined S.C. at UMMC, a UMMC emergency-room physician, officers from the Jackson Police Department (JPD), two crime-lab technicians from the JPD crime laboratory, a forensic biologist from the Mississippi Crime Laboratory, a DNA analyst from Scales Biological Laboratories, Doleac of the CJC, and Gowen of the CAC.

¶17. The evidence sufficiently showed that a sexual encounter had occurred between S.C. and Lomax. The ultimate question, however, was whether it was consensual.

¶18. During Gowen's testimony, the State questioned Gowen about what S.C. had told her during the interview, with no objection from the defense. S.C.'s account to Gowen about what occurred on January 20 was fairly consistent with what S.C. had told both Doleac and the sexual-assault nurse at UMMC. Gowen testified that she had found S.C.'s statements

6

"consistent with a child who had been abused." The State did not offer the video recording into evidence.

¶19. During Gowen's cross-examination, Lomax's attorney sought to introduce the video on the basis it contained prior inconsistent statements by S.C. Defense counsel did not want the entire video shown because it contained evidence about Lomax's other rape charge. So defense counsel asked the court to allow portions of the video to be played for the jury for demonstrative purposes only. The State objected to any portion of the video recording being shown to the jury. The State argued if Lomax wanted to impeach S.C. with the statements on the video "the time to do it was when [S.C.] was on the stand"; the State claimed that trial counsel "had ample opportunity to do that while [S.C.] was on the stand." Citing *Hall v. State*, 691 So. 2d 415 (Miss. 1997), Lomax's trial counsel argued that Lomax was entitled to question Gowen about the video under Rule 613 of the Mississippi Rules of Evidence.

¶20. The trial court sustained the State's objection, finding that "the victim should have been impeached with it . . . while she was on the witness stand" so that "she would have had an opportunity to have viewed it and responded to it."

¶21. Later, during Gowen's cross-examination, defense counsel asked Gowen, "was there anything unusual about your observations that day about [S.C.]?" The State objected. Defense counsel said he intended to ask Gowen about the conclusion of her report where she recommended a mental-health assessment for S.C. due to unusual behaviors during the interview. The trial court prohibited this line of questioning also, stating, "I don't believe

7

it's relevant. I believe that even if it was nominally relevant, it would violate Rule 403, so I'm going to disallow it."

¶22. At the conclusion of Gowen's testimony, defense counsel made a proffer by asking Gowen about S.C.'s unusual behavior on the video during the interview. Gowen testified that, after she left the room, S.C. began talking to herself using her hands as puppets, each with a different voice. Gowen admitted hearing S.C. say "you should just tell her the truth." Gowen denied hearing S.C. say that the truth would "ruin the relationship" or that "you should just get out of here so you can text her and tell her the truth." Gowen testified that this behavior as well as S.C.'s flat, monotone affect, caused her to recommend a mental health assessment for S.C., and Gowen admitted that her report included a recommendation for a mental-health assessment due to unusual behaviors exhibited during the interview.

¶23. In addition to the evidence presented on the rape charge, the State submitted evidence in support of the two charged counts of simple assault on a law-enforcement officer. On February 7, 2013, two weeks after the alleged rape incident, JPD Officers Shivon Hodges and Ella Thomas questioned Lomax at the police station. Near the end of the interview, Officer Hodges began yelling at Lomax, calling him "Ronald Rapist." After the interview, Hodges and Thomas escorted Lomax out of the interrogation room and to the holding facility. Hodges testified that Lomax became angry in the hallway and yelled, "F*** y'all. Y'all don't have s*** on me." When they entered the elevator, Lomax attacked Hodges and tried to retrieve her weapon. Thomas intervened. Hodges and Thomas wrestled with Lomax

8

until the elevator doors opened and other officers came to assist them. Both officers testified that they had suffered minor injuries from the attack.

¶24. Following the State's case-in-chief, Lomax testified on his own behalf. He admitted to having sex with S.C., but he claimed it was consensual. He said it occurred at his father's home, while his father was asleep. Lomax said that S.C. became angry with him afterwards when he would not respond to any of her text messages to him.

¶25. As to the alleged assaults on Officers Hodges and Thomas, Lomax testified that he did not attack either officer and that they attacked and punched him, throwing him out of the elevator and dragging him to a jail cell.

¶26. The jury found Lomax guilty of rape in violation of Section 97-3-65(4)(a), and not guilty on both counts of simple assault of a law-enforcement officer.

¶27. Lomax appealed, raising a number of issues. Having reviewed and considered the record, we find that the trial court erred in not severing Lomax's rape count from the simple-assault counts. We also find that the trial court erred by not allowing cross-examination with regard to S.C.'s statements. While not necessarily reversible error individually, we find their cumulative effect deprived Lomax of a fair trial. The State's evidence in this case, while sufficient to sustain a conviction, was not overwhelming. Thus, we cannot say that the errors in this case were harmless beyond a reasonable doubt. Additional facts, as necessary, will be related in our discussion.

## DISCUSSION

### I. SEVERANCE

¶28. We agree with Lomax that the trial court erred in refusing to sever the simple-assault charges from the rape charge.

¶29. When reviewing issues of severance, this Court applies an abuse-of-discretion standard of review. *Brawner v. State*, 872 So. 2d 1, 6-7 (Miss. 2004). Mississippi Code Section 99-7-2 provides the authority given to trial courts to try a defendant for multiple counts in one indictment. The statute reads:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

Miss. Code Ann. § 99-7-2 (Rev. 2015).

¶30. When addressing an issue of severance, *Corley v. State*, 584 So. 2d 769 (Miss. 1991), provides guidance to trial courts. *Corley* stated:

> When a defendant raises the issue of severance, we recommend that a trial court hold a hearing on the issue. The State, then, has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions.

*Id.* at 772.

¶31.    The trial court should consider the following factors in determining whether severance is proper: (1) whether the time period between the occurrences is insignificant; (2) whether the evidence proving each count would be admissible to prove each of the other counts; and (3) whether the crimes are interwoven. *Id.* If this procedure is followed, this Court "will defer to the trial court's findings even if the jury later acquits the defendant on one or more counts or if this Court concludes on appeal that a directed verdict, J.N.O.V. or new trial should have been granted on one or more counts." *Id*.

¶32.    Here, the trial court held a *Corley* hearing but did not discuss each *Corley* factor when it denied Lomax's motion to sever the counts.  In denying Lomax's motion to sever the assault counts from the rape count, the trial court agreed with the State's contention that the all counts were connected because Lomax was interrogated about the rape allegation, which resulted in the simple assaults.  The trial court failed to take into consideration the other *Corley* factors.

¶33.    First, "[t]he intervening time period must be insignificant as a prerequisite to both the second or third options." *Williams v. State*, 794 So. 2d 1019, 1025 (Miss. 2001).  There is no bright-line test with regard to the time factor, and the trial courts are instructed to consider the totality of events surrounding each case.

¶34.    Here, the time period in this case was eighteen days–the alleged rape having occurred on January 20, and the alleged assaults having occurred on February 7.  This Court has affirmed trial-court decisions that have found several months to be insignificant time periods. *See Rushing v. State*, 911 So. 2d 526, 535-36 (Miss. 2005) (holding that five-month time

11

period in which three prescription forgeries were committed was not insignificant); *Eakes v. State*, 665 So. 2d 852, 861-62 (Miss. 1995) (five-month time period was insignificant where sexual offenses involved the same victim).

¶35. *Rushing* and *Eakes*, however, are distinguishable. In *Rushing*, the two offenses at issue were almost identical. In *Eakes*, the victim was the same person. Thus, the five-month time span in both cases was insufficient to say the offenses were separate and distinct actions or transactions.

¶36. Here, though, the alleged offenses clearly were not based on the "same act or transaction." And the victims were not the same. Thus, the intervening time period of more than two weeks is a factor and is not insignificant in this instance. Accordingly, we find the first *Corley* factor weighs in favor of severance.

¶37. On the second factor, whether the evidence proving each count would be admissible to prove each of the other counts, both parties agree that the evidence needed to prove the rape charge was different from the evidence needed to prove the simple-assault charges. Thus, this factor weighs in favor of severance.

¶38. As to the third factor, whether the crimes are interwoven, we find no "common thread." This Court's decision in *Richardson v. State*, 74 So. 3d 317 (Miss. 2011), helps to illustrate. In *Richardson*, this Court found that the trial court did not err in denying the defendant's motion to sever a charge of capital murder and a charge of being a convicted felon in possession of a firearm. *Id*. at 328. The defendant in that case killed the victim by hitting him on the head with a baseball bat. *Id*. The defendant stole the victim's wallet, and

12

later that evening used the money contained in the wallet to buy two guns. *Id*. When discussing the third *Corley* factor, this Court stated:

> [W]e find that [Michael] Richardson's charges have a "common thread"–the money stolen from [Harvey] Evans. The underlying felony in Richardson's murder charge is robbery. After Richardson hit Evans on the head with a baseball bat, he stole Evans's wallet, which contained a large amount of cash. Shortly thereafter, Richardson used the money he had stolen from Evans, among other things, to purchase two guns. Based on this connection, we find that the trial court did not abuse its discretion in finding that Richardson's two charges were interwoven.

*Id*.

¶39. In *Ott v. State*, 722 So. 2d 576, 577 (Miss. 1998), the trial court denied the defendant's request to sever separate counts of the sale and possession of marijuana. This Court agreed, finding that the two offenses were interwoven because the information discovered from the first purchase led to the set-up of the second purchase. *Id*. at 581.

¶40. In both *Richardson* and *Ott*, a "common thread" allowed the respective defendants to accomplish the subsequent offense(s). Here, although the interrogation is a connecting factor between the offenses, the interrogation was not a means to accomplish the alleged assault on the officers.

¶41. Because all three *Corley* factors weighed in favor of severance, we find that the trial court erred when it refused to sever the rape charge from the assault charges.

¶42. The State contends that, even if the trial court erred in not severing the counts, Lomax can show no prejudice because he was acquitted on the assault charges. While there is validity to the State's point, we must reject it. As mentioned, this case centers on credibility, and the evidence in this case was not overwhelming. Thus, we cannot say that the evidence

13

submitted in support of the assault charges did not unfairly buttress the State's theory of the rape case, built on the premise that Lomax is violent against women. Coupled with the cross-examination violation (to be discussed next), we find no merit in the State's argument.

## II. CROSS-EXAMINATION

¶43.    Cross-examination no doubt is a matter of right. *Black v. State*, 506 So. 2d 264, 266 (Miss. 1987). "[O]ne accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness." *Suan v. State*, 511 So. 2d 144, 148 (Miss. 1987). "Limitations placed on cross-examination are reviewed using an abuse-of-discretion standard." *Ervin v. State*, 136 So. 3d 1053, 1058 (Miss. 2014). "The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence." *Johnston v. State*, 618 So. 2d 90, 93 (Miss. 1993).

¶44.    Here, we find no error in the trial court's ruling(s) prohibiting Lomax from showing the video recording, or any portions of it, to the jury. As mentioned, Lomax's defense counsel sought to use the video recording as impeachment evidence against S.C. and/or Gowen, based on the contention that it contained inconsistent statements made by S.C. while she was sitting alone in the interview room, because this went to her credibility. After reviewing the tape, the trial court would not allow it because much of it was incomprehensible, could not be put into context, and would be prejudicial to the State's case.

¶45.    The video recording at issue constitutes extrinsic evidence. Mississippi Rule of Evidence 613(b) states as follows with regard to extrinsic evidence:

14

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

¶46. The general rule with regard to use of extrinsic evidence as impeachment evidence is, if a witness admits to making a prior inconsistent statement, extrinsic evidence of that statement is inadmissible. *Foster v. State*, 508 So. 2d 1111, 1119 (Miss. 1987), *overruled on other grounds by* ***Powell v. State***, 806 So. 2d 1069, 1080 (Miss. 2001), (citing ***United States v. Greer***, 806 F. 2d 556 (5th Cir. 1986) (applying Fed. R. Evid. 613)). This is because the witness is then impeached when that occurs.

¶47. But whether a statement is in fact inconsistent is committed to the sound discretion of the trial court. *See* ***State v. Jaiman***, 850 A.2d 984, 988 (R.I. 2004) (whether a statement is inconsistent for purposes of impeachment evidence is a determination for the trial judge); ***People v. Hastings***, 515 N.E.2d 260, 264 (Ill. 1987) (same); ***United States v. Jones***, 808 F. 2d 561, 568 (7th Cir. 1986) (same); ***State v. St. Germain***, 369 A.2d 631, 632 (Me. 1977) (same).

¶48. Here, S.C. admitted during proffer outside the presence of the jury, to making the statements recorded by the video camera. She denied, however, that the statements were in reference to Lomax and/or the alleged rape. Whether that is true or not cannot be discerned (put into context) without speculation or conjecture. Thus, it cannot be said that any of the statements made by S.C. while sitting alone in the interview room are inconsistent for purposes of Rule 613(b).

¶49.    Further, having reviewed the video recording, we cannot impugn the trial court's stated impression of it.  To us, certain statements are comprehensible while others are not–and there is debate even among us as to which.  But we are in a completely different setting than the trial court.  What may be understandable to us certainly might not be to others.  Thus, we acknowledge the trial court's concern about showing the video to the jury.

¶50.    Accordingly, we find no abuse of discretion in the trial court's decision not to allow the video recording itself–as extrinsic evidence–to be used as impeachment evidence.

¶51.    That said, we do however find error on the part of the trial court in not allowing Lomax' defense counsel to cross-examine S.C. concerning her alleged prior statement(s), made at  either the CAC interview or the CJC interview.  This includes those statements made by S.C. when she was sitting alone in the interview room.  While the video recording was inadmissible for purposes of  613(b), Lomax should have been allowed to question S.C. about the alleged statements by ordinary cross-examination.[3]  The record illustrates that this could have been done properly.

---

[3] *See also* M.R.E. 608(b), which states as follows:

(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

16

¶52. The same goes for Gowen's testimony. Gowen was allowed to offer her opinion that the statements S.C. made to her during the interview were consistent with someone who has been abused. This was opinion testimony, the credibility of which the jury must weigh and determine. Gowen observed S.C.'s conduct while S.C. was left alone in the room. Whatever assessment she got from it certainly would go to Gowen's credibility. Thus, we find that the trial court erred in not allowing Lomax's defense counsel to cross-examine Gowen accordingly.

¶53. For these reasons, we hold that Lomax is entitled to a new trial, in which these errors are unlikely to recur.

**CONCLUSION**

¶54. We reverse the judgment of the Hinds County Circuit Court and remand the case to the trial court for a new trial on the rape charge.

¶55. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING AND COLEMAN, JJ.; DICKINSON, P.J., AND MAXWELL, J., JOIN IN PART. LAMAR AND MAXWELL, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶56. With respect, I concur in part and in the result. I agree with the plurality's decision to reverse the judgment and remand this case for a new trial. I write separately to provide analysis of the reversible error that occurred in this case when the trial court prevented Lomax's cross examination of S.C., the lead prosecution witness, and of Erin Gowen, the

17

forensic interviewer, about the statements that S.C. made during a break in the forensic interview. I am in agreement with the plurality's finding that this was error. But I would find also that the trial court erred by excluding the videotape of S.C.'s prior inconsistent statements. I would hold that these errors violated Lomax's federal and state constitutional rights to cross examine the witnesses against him in full. U.S. Const. amend. VI; U.S. Const. amend XIV; Miss. Const. art. 3, § 26.

¶57.     During her forensic interview at the Children's Advocacy Center, S.C. provided Gowen a description of her alleged rape by Lomax. The video of the interview reveals that, near its end, Gowen briefly left the room, leaving S.C. alone. What happened next is truly bizarre. S.C. began talking to herself, using her hands as if they were sock puppets that were arguing with each other, with each hand taking a different side of the argument, and with S.C.'s providing, in two different vocal pitches, the verbal dialogue for the "conversation" in which her hands were engaged. Several times during this dialogue,[4] S.C. stopped arguing with herself and clutched her head in apparent frustration. Some of what S.C. said is unintelligible, but the following was discernible: "stop. no. stop. no," "this girl is going to ruin the relationship," "you should just tell her that . . . you should just tell her the truth," "but if I tell her the truth then like," "what are you gonna do," "I don't know, I was going to maybe, I should tell her what's going on because she's gonna think . . . ," and "I just need to hurry up and get out of the room and then text her and tell her the truth."

---

[4] While I use the term *dialogue* to refer to the sock puppet "conversation," because S.C. was talking to herself, the word *monologue* may be more apt.

¶58. The prosecution objected to Lomax's attempt to cross examine S.C. about this incident. Lomax argued that, on the video, S.C. had made prior inconsistent statements that affected her credibility and that he was entitled to impeach her with them. Before ruling, the trial court directed Lomax to make a proffer of the testimony. During the proffer, S.C. said she remembered having made the statements, but she denied that the statements had to do with her rape allegation against Lomax. She testified that the statements concerned another situation involving a friend. After the proffer, the trial court viewed the video.

¶59. Lomax argued that S.C.'s statements on the video were relevant to S.C.'s credibility and that a reasonable person could believe the statements referred to the rape allegations which S.C. had discussed with Gowen just prior to making the statements. Lomax urged that the statements were prior inconsistent statements and that the video of the statements could be used for impeachment under Mississippi Rule of Evidence 613. The trial court excluded the statements, stating that S.C.'s statements were "unintelligible, emotional ramblings" and that the few words the court heard were irrelevant. The trial court also excluded the statements under Mississippi Rule of Evidence 403 as more prejudicial than probative. M.R.E. 403. Later, Lomax attempted to question Gowen about S.C.'s bizarre behavior and her recommendation that S.C. needed a mental health assessment. The trial court denied this line of questioning on the ground of relevance.

¶60. On appeal, Lomax argues that the trial court's ruling impermissibly limited the scope of cross examination and violated his state and federal constitutional rights to full cross examination of witnesses. "Cross-examination is a matter of right. It is secured by the

19

confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the states via the Fourteenth Amendment." ***Black v. State***, 506 So. 2d 264, 266-67 (Miss. 1987) (citing ***Delaware v. Van Arsdall***, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). "The right is secured independently by the confrontation clause of this state's constitution . . . ." ***Black***, 506 So. 2d at 267 (citing Miss. Const. art 3, § 26). The scope of the right is wide; it is "coextensive with the limits of relevancy measured by the issues." ***Black***, 506 So. 2d at 267. Indeed, the "right of confrontation 'extends to and includes the right to fully cross examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.'" ***Scott v. State***, 796 So. 2d 959, 964 (Miss. 2001) (quoting ***Myers v. State***, 296 So. 2d 695, 700 (Miss.1974)).

¶61.    Mississippi Rule of Evidence 611(b) embraces these principles, providing that "[c]ross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." M.R.E. 611. Under this rule, and under the federal and state constitutions, "one accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and *especially is this so with respect to the principal prosecution witness*." ***Suan v. State***, 511 So. 2d 144, 148 (Miss. 1987) (emphasis added). Mississippi Rule of Evidence 613(b) provides, in pertinent part, that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an

20

opportunity to interrogate him thereon, or the interests of justice otherwise require." M.R.E. 613(b).

¶62. This Court reviews a trial court's admission or exclusion of evidence for abuse of discretion. *Hartfield v. State*, 161 So. 3d 125, 130 (Miss. 2015). The trial court barred Lomax from cross examining S.C. about her prior inconsistent statement on the ground of relevance. Mississippi Rule of Evidence 401 states that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Lomax argued that S.C.'s statements on the video were relevant to her credibility. Certainly, S.C.'s statements were relevant to her credibility if she was talking about the rape at issue in this case, the only subject that had been under discussion mere moments earlier, immediately prior to the interviewer's departure from the room. Mississippi Rule of Evidence 104(b) is the rule that applies when the relevance of evidence is conditioned on the establishment of a certain fact. M.R.E. 104(b). Rule 104(b) states, in part, that:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. If the offeror fails to meet the condition, the objector may request the jury be instructed to disregard the evidence; however, such request shall not be a prerequisite to motion for mistrial.

M.R.E. 104(b).

¶63. The United States Supreme Court has outlined the trial court's role under Federal Rule of Evidence 104(b), stating:

21

In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

*Huddleston v. United States*, 485 U.S. 661, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988).

Thus, under Rule 104(b), the determination of the existence of the condition of fact is for the jury, while the trial court's function is limited to determining whether there is sufficient evidence to enable the jury reasonably to find that the fact existed. *Id.*, 108 S. Ct. 1496. To illustrate this principle, I briefly relate the facts of *Huddleston*. In Huddleston's trial for selling stolen videotapes, the prosecution sought to introduce prior bad acts evidence concerning Huddleston's sale of television sets to show that, because Huddleston previously had sold stolen merchandise, he had known the videotapes were stolen. *Id.* at 686, 108 S. Ct. 1496. But Huddleston's prior sale of the television sets was relevant only if they had been stolen. *Id.* After examining all of the evidence surrounding the sale of the sets, the Supreme Court held that the evidence was sufficient because "the jury reasonably could have concluded that the televisions were stolen, and the trial court therefore properly allowed the evidence to go to the jury" under Rule 104(b). *Id.* at 693, 108 S. Ct. 1496. This Court adopted *Huddleston*'s procedures for determining conditional relevance under Rule 104(b) in *Gayton v. State*, 595 So. 2d 409, 415 (Miss. 1992).

¶64.    In this case, S.C.'s statements on videotape were relevant to her credibility if they concerned the rape at issue. The trial court made a finding of fact that the statements did not concern the rape at issue. This was error. Under *Huddleston*, the trial court making a

22

conditional relevance determination under Rule 104(b) is not permitted to make the preliminary fact finding. On the contrary, the trial court's role is limited to determining whether there is sufficient evidence to enable the jury to find that the fact existed. *Id.* at 690, 108 S. Ct. 1496. In making that determination, "the trial court must consider all evidence presented to the jury." *Id.* at 690-91, 108 S. Ct. 1496.

¶65. It is abundantly clear that sufficient evidence existed in this case for the jury reasonably to have found that S.C.'s statements concerned the alleged rape at issue. S.C. made the statements near the end of the forensic interview in which she discussed the event at length and in detail. And when Gowen left the room, S.C. immediately began talking to herself, grabbing her head in apparent frustration, and heatedly debating with herself, using her hands as props, about whether she should "tell her the truth." A reasonable jury could conclude from all of the evidence that it was more likely than not that S.C. had been talking about the alleged rape, not about some unrelated situation. Therefore, the trial court abused its discretion by preventing Lomax from cross examining S.C. about these statements.

¶66. Further, the trial court should have allowed Lomax to introduce as extrinsic evidence the portion of the videotape that contained the statements. M.R.E. 613. The plurality observes that, if a witness admits to having made a prior inconsistent statement, extrinsic evidence of that statement is not admissible, and the determination of whether a statement is inconsistent is within the trial court's discretion. Plur. Op. at ¶¶ 46-47 (citing *Foster v. State*, 508 So. 2d 1111, 1119 (Miss. 1987), *overruled on other grounds by Powell v. State*, 806 So. 2d 1069, 1080 (Miss. 2001) (citing *United States v. Greer*, 806 F.2d 556 (5th Cir. 1986)); *State v. St.*

23

***Germain***, 369 A. 2d 631, 632 (Me. 1977)). I would find that the trial court abused its discretion by excluding the video of S.C.'s statements. While S.C. acknowledged in her proffer that she had made the statements, she did not admit that they were inconsistent with her trial testimony. The video reveals that, after giving a forensic interview stating that Lomax had raped her, S.C. began arguing with herself about whether she should tell the truth. The trial court abused its discretion by finding that S.C.'s statements were consistent with her trial testimony.

¶67.    I would hold that the trial court invaded the province of the jury by weighing S.C.'s credibility. *See **Gayton***, 595 So. 2d at 416 ("[i]f preliminary questions of conditional relevancy were determined solely by the judge, as provided in subdivision [104](a), the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries") (quoting F.R.E. 104(b), advisory committee's note). And the matter of S.C.'s credibility was pivotal in this case. Lomax admitted having had consensual sex with S.C., and S.C.'s physical examination did not rule out consensual sex because it revealed no physical injuries. Further, the DNA evidence in this case was weak. The forensic DNA analyst testified that a partial profile taken from the handle of the knife that Lomax allegedly used to subdue S.C. implicated Lomax, but with the relatively high frequency of one in every 3,804 persons. S.C.'s DNA also was found on the knife, raising the possibility that S.C. herself transferred Lomax's DNA to the knife after having had consensual contact with him. Thus, the jury's belief that S.C. was telling the truth about the rape accusation was vital to the prosecution's case against Lomax.

24

¶68. Due to the strong probative value of S.C.'s statements as impeachment evidence, the trial court erred by finding them more prejudicial than probative under Mississippi Rule of Evidence 403. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403. S.C.'s statements could have been more prejudicial than probative only if S.C. had been talking about an incident other than the alleged rape. But if S.C. had been talking about the incident under consideration, the statements were so highly probative of her credibility that they could not have been more prejudicial than probative. And because, under Rule 104(b), it was the jury's role to determine whether S.C. was talking about the alleged rape, the trial court's Rule 403 ruling was erroneous.

¶69. The trial court also erred by preventing Lomax from questioning Gowen about S.C.'s behavior on the video. Gowen testified on behalf of the State about the contents of S.C.'s forensic interview. She testified that S.C.'s interview was consistent with that of a child who had been abused. On cross examination, the trial court sustained the State's objection to Lomax's attempt to question Gowen about her recommendation that S.C. should undergo a mental health assessment. The trial court ruled that this evidence was not relevant and that it was more prejudicial than probative. During a proffer, Gowen testified that, due to S.C.'s "flat affect" during the interview and the bizarre behavior S.C. had exhibited on the video, she had recommended that S.C. undergo a mental health assessment.

¶70.   A witness's mental state is relevant for impeachment purposes, and a defendant may challenge a witness's credibility with relevant evidence concerning mental defects. *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001). Because Gowen's testimony that S.C.'s behavior warranted a mental evaluation went to S.C.'s mental capacity, it was highly relevant to S.C.'s credibility. Gowen's testimony on direct that S.C.'s interview was consistent with that of a child who had been abused bolstered S.C.'s credibility. On cross, Lomax had a right to attack S.C.'s credibility by asking Gowen about her recommendation of a mental health assessment. And, due to the strong probative nature of Gowen's opinion, the trial court abused its discretion by deeming it more prejudicial than probative under Rule 403.

¶71.   Moreover, the exclusion of S.C.'s statements and Gowen's opinion implicates the Rule of Completeness. Mississippi Rule of Evidence 106 provides: "[w]hen a writing or recorded statement or part therof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." M.R.E. 106. Although the video of the interview was not admitted into evidence, Gowen recited material portions of the interview to the jury and opined that S.C.'s interview was consistent with abuse. Because the trial court excluded S.C.'s statements, the video, and Gowen's opinion about S.C.'s bizarre behavior, the jury received an incomplete picture of what had occurred at the Children's Advocacy Center. In *Sanders v. State*, 237 Miss. 772, 776-77, 115 So. 2d 145, 147 (1959), this Court held that, under the Rule of Completeness, an officer's testimony about his interview of the defendant allowed the defendant to introduce other parts of the

26

tape recording of the interview. ***Sanders*** stands for the proposition that a party cannot avoid the Rule of Completeness by having a witness testify about the contents of an interview rather than admitting a writing or recording of that interview. Indeed, the comment to Rule 106 recognizes that "[u]nder Mississippi case law the rule of completeness is extended . . . even to oral statements." M.R.E. 106 cmt. (citing ***Sanders***, 237 Miss. 772, 115 So. 2d 115). In fairness, because the State introduced the contents of the interview through Gowen's testimony, the video of S.C.'s behavior and Gowen's opinion about that behavior should have been admitted to provide the jury a complete picture of what occurred. M.R.E. 106.

¶72.    In conclusion, the video of S.C.'s forensic interview revealed highly unusual behavior and statements that cast substantial doubt on the credibility of the State's lead witness. The trial court abused its discretion by misapplying Rule 104(b), erroneously preventing Lomax from cross examining S.C. about her statements and erroneously preventing the introduction of the videotape as extrinsic evidence of the prior inconsistent statements. The trial court also abused its discretion by preventing Gowen from explaining that it was S.C.'s bizarre behavior that had caused her to recommend a mental evaluation. These errors amplified each other and gave the jury a misleading impression of S.C.'s credibility and mental stability. The errors violated Lomax's federal and state constitutional rights to cross examine fully all witnesses against him on every material point bearing on their credibility. U.S. Const. amend. VI.; U.S. Const. amend XIV; Miss. Const. art 3, §26;  ***Scott***, 796 So. 2d at 964 (quoting ***Myers***, 296 So. 2d at 700). Therefore, I would find that the trial court's exclusion of S.C.'s

statements, the video of those statements, and Gowen's opinion was reversible error. M.R.E.

103(a).

**KING AND COLEMAN, JJ., JOIN THIS OPINION.  DICKINSON, P.J., AND MAXWELL, J., JOIN THIS OPINION IN PART.**